Janice K. HARTRICK and C. Michael
Cathey, Appellants,

v.

GREAT AMERICAN LLOYDS
INSURANCE COMPANY,
Appellee.

No. 01–99–00215–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 21, 2001.

Michael A. Pohl, Law Offices of Michael A. Pohl, Jeff Nobles, Beirne, Maynard & Parsons, L.L.P., Houston, for Appellant.

Aaron L. Mitchell, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, for Appellee.

Panel consists of Justices MIRABAL, TAFT, and SMITH.[*]

## OPINION ON SECOND MOTION FOR REHEARING

TIM TAFT, Justice.

Appellants, Janice K. Hartrick and C. Michael Cathey, have filed a second motion for rehearing and motion for rehearing en banc. We deny rehearing, but withdraw our opinion and judgment of August 2, 2001, and issue this new opinion in its stead. Accordingly, we deny the motion for rehearing en banc as moot.[1]

This is an insurance coverage case, decided on cross-motions for summary judgment, in which the trial court construed a commercial general liability policy in favor of appellee, Great American Lloyds Insurance Company (Great American), and against Hartrick and Cathey. Hartrick and Cathey had purchased a house built by Great American's insured, Claremont Building Corporation. After discovering construction defects in the house, Hartrick and Cathey sued Claremont and others and recovered a $145,000 judgment, based on a jury verdict that Claremont breached its implied warranties of good and workmanlike construction and suitability for habitation. Hartrick and Cathey then sued Great American in this action, as assignees of Claremont's policy with Great American, seeking indemnity for the judgment in the underlying case. The trial court found no coverage, and rendered summary judgment in favor of Great American. We address whether Claremont's liability for defective construction work triggered an "occurrence" under the Great American policy. We conclude it did not and affirm.

### Facts and Procedural History

#### A. The Underlying Lawsuit

■ Claremont built the house in 1991 and sold it to its original owners, who sold it to Hartrick and Cathey in 1993. After discovering structural problems and defects in the house's poured-slab foundation, Hartrick and Cathey sued Claremont and others.[2] Hartrick and Cathey alleged Claremont was negligent and had violated the Consumer Protection Deceptive Trade Practices Act (DTPA) and breached implied warranties of good and workmanlike construction and suitability for habitation. Hartrick and Cathey claimed they paid full market value for the house and could never recoup that value, even if the defects

---

[*] The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. *See Giesberg v. State,* 945 S.W.2d 120, 131 n. 3 (Tex.App.—Houston [1st Dist.] 1996), *aff'd,* 984 S.W.2d 245 (Tex.Crim.App.1998).

2. Pursuant to *Gupta v. Ritter Homes, Inc.,* 646 S.W.2d 168 (Tex.1983), Hartrick and Cathey had standing to sue, even though they did not purchase the house directly from Claremont. *See id.* at 169. *Gupta* extended to subsequent purchasers the implied warranties imposed by law on builders and vendors of residential property. *Id.*

were repaired, and thus sought damages beyond costs of repair, including damages for loss of market value.

Great American provided counsel to defend Claremont in Hartrick's and Cathey's lawsuit but reserved its rights to deny coverage if the outcome revealed no covered damages. The case was submitted to a jury under a negligence theory as to Claremont and its subcontractor, Custom Foundations, Inc., and DTPA and breach of warranty theories of liability as to Claremont.

The jury found that neither Claremont nor its subcontractor were negligent and that Claremont was not liable for false, misleading, or deceptive acts or practices under section 17.46 of the DTPA. TEX. BUS. & COMM.CODE ANN. § 17.46(a) (Vernon Supp.2001). The jury answered "yes" to the warranty question as to Claremont, however, and awarded Hartrick and Cathey $160,000 in damages against Claremont.[3] After reducing the jury award by credits for other defendants' settlements, judgment was entered against Claremont for $145,000, plus interest and attorney's fees, and the trial court issued a turnover order requiring Claremont to assign its rights in the Great American policy to Hartrick and Cathey.[4]

## B. This Coverage Lawsuit

Hartrick and Cathey filed this lawsuit seeking a declaratory judgment that Great American's policy covered Claremont's liability in the underlying case and that Great American therefore had a duty to indemnify Hartrick and Cathey, as assignees of Claremont's rights. Great American denied any coverage for defective workmanship under the insuring agreement and the policy definitions of "property damage" and "occurrence." The parties filed cross-motions for summary judgment on the coverage issue. The trial court granted Great American's motion, and denied Hartrick's and Cathey's motion, on the grounds that the policy afforded no coverage for the damages awarded Hartrick and Cathey in the underlying case.

Hartrick and Cathey challenge the trial court's declaration of no coverage on two grounds. In their first issue, they claim the trial court erred by ruling that Great American had no duty to indemnify under the policy because the jury in the underlying case awarded damages for "defective construction work that result[ed] in property damage," which, Hartrick and Cathey contend, qualifies as an "occurrence" under the policy. Hartrick and Cathey rely on two decisions by the Louisiana Third Circuit Court of Appeals, which applied this reasoning in construing a Texas poli-

---

3. The warranty question included the following instruction:

You are instructed that a builder/vendor impliedly warrants to his purchaser that a building constructed for residential use has been constructed in a good and workmanlike manner and is fit for human habitation. This rule applies to the original owner of the building and any subsequent owners.

"Failure to comply with a warranty" means any of the following:

a) failing to perform services in a good and workmanlike manner.

A good and workmanlike manner is that quality of work performed by one who has the knowledge, training or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work.

[or]

b) selling a home that was not suitable for human habitation.

4. Under the record before us, the post-judgment order requiring Claremont to assign its rights was in keeping with the requirements of *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex.1996).

cy.[5] In their second issue, Hartrick and Cathey ask us to follow the reasoning of these Louisiana cases, in the interest of uniform interstate interpretation of policy provisions.

## Standard of Review

### A. Summary Judgment

■ We follow the usual standard of review for traditional summary judgments granted under rule 166a(a) and (b) of the Rules of Civil Procedure: The party with the burden of proof must prove it is entitled to judgment by establishing each element of its claim or defense as a matter of law, or by negating an element of a claim or defense of the opposing party as a matter of law. TEX.R. CIV. P. 166a(a), (b) (cmt.). When a motion for summary judgment raises multiple grounds, we may affirm if any ground is meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996). These standards are well-established in insurance-coverage cases. *See e.g., State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex.1998); *Hanson v. Republic Ins. Co.*, 5 S.W.3d 324, 327 (Tex.App.—Houston [1st Dist.] 1999, pet. denied).

■ When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, we may determine all questions presented, including the propriety of overruling the losing party's motion, provided each party has fully met its burden and sought final judgment relief. *CU Lloyd's v. Feldman*, 977 S.W.2d 568, 569 (Tex.1998); *Hanson*, 5 S.W.3d at 327.

### B. Interpretation of Insurance Contracts

■ Insurance contracts are subject to the same rules of construction as ordinary contracts. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997); *Hanson*, 5 S.W.3d at 328. Accordingly, when a policy permits only one interpretation, we construe it as a matter of law and enforce it as written. *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex. 1992); *Hanson*, 5 S.W.3d at 328. We must strive to effectuate the policy as the written expression of the parties' intent. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995). To this end, we construe the terms of the policy as a whole, and consider all of its terms, not in isolation, but within the context of the policy. *See id.; Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex.1994); *Tumlinson v. St. Paul Ins. Co.*, 786 S.W.2d 406, 408 (Tex.App.—Houston [1st Dist.] 1990, writ denied).[6]

### Terms of the Policy

The policy Great American issued to Claremont was a standard 1993 broad

---

**5.** *Iberia Parish School Bd. v. Sandifer & Son Const. Co.*, 721 So.2d 1021 (La.App. 3rd Cir. 1998); *see also Massey v. Parker*, 733 So.2d 74 (La.App. 3rd Cir.1999, writ denied) (following *Sandifer*). We note that only the *Sandifer* decision construed a Texas CGL policy.

**6.** Under the "contra-insurer" rule, insurance policies are construed against the insurer when policy terms permit more than one interpretation and are thus ambiguous, *Vaughan*, 968 S.W.2d at 933, especially when the terms at issue exclude or limit coverage. *See National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991); *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex.App.—Houston [1st Dist.] 1990, writ denied). Moreover, an insurer who relies on an exclusion carries the burden to prove it applies. TEX. INS.CODE ANN. art. 21.58(b) (Vernon Supp.2001). Here, however, no one claims the policy is ambiguous and the terms at issue do not exclude or limit coverage. Accordingly, we need not apply the "contra-insurer" rule, and article 21.58(b) does not apply.

form commercial general liability (CGL) policy. Section I of the policy contains the insuring agreement and the terms of coverage. Coverage A addresses Great American's duty to pay. Under Coverage A, Great American had a duty to pay, i.e., to indemnify, for damages that Claremont became legally obligated to pay for "bodily injury" and "property damage," as follows:

## SECTION I—COVERAGES
## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**
 a. We will pay those sums that [Claremont] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies....

 . . .

 b. The insurance applies to "bodily injury" and "property damage" only if:
 (1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
 (2) the "bodily injury" or "property damage" occurs during the policy period.[7]

Section V of the policy contains the definitions for terms of the insuring agreement that appear above in quotation marks. The pertinent definitions for this case are:

## SECTION V—DEFINITIONS

9. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

12. **"Property damage"** means:
 a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
 b. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[8]

## Duty to Indemnify for Breach of Implied Warranty

### A. Duty to Indemnify

 Unlike the duty to defend, which arises when a petition seeking damages alleges facts that *potentially* support claims covered by a liability policy, the duty to indemnify arises from proven, adjudicated facts. *See Cowan,* 945 S.W.2d at 821 ("The duty to indemnify is triggered by the actual facts establishing liability in the underlying suit."); *see also Pilgrim Enters., Inc. v. Maryland Cas. Co.,* 24 S.W.3d 488, 493 (Tex.App.—Houston [1st Dist.] 2000, no pet.); *American Alliance Ins. Co. v. Frito-Lay, Inc.,* 788 S.W.2d 152, 153–54 (Tex.App.—Dallas 1990, writ dism'd) (both contrasting duties to indemnify and defend under liability policy). No duty to indemnify arises unless the underlying litigation establishes liability for damages covered by the insuring agreement of the policy. *See Employers Cas. Co. v. Block,* 744 S.W.2d 940, 944 (Tex. 1988) (disapproved on other grounds by *State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 714 (Tex.1996)); *see also Heyden Newport Chem. Corp. v. Southern*

---

**7.** All bolded emphasis in original. Coverage A also lists exclusions from coverage, but none is at issue here.

**8.** All bolded emphasis in original.

*Gen. Ins. Co.,* 387 S.W.2d 22, 25 (Tex.1965) (noting that, while "[n]o legal determination of ultimate liability is required before the insurer becomes obligated to defend the suit[,]" the insurer pays because the insured "has been adjudicated to be legally responsible").

### B. Did Claremont's Liability for Breach of Implied Warranty Trigger Great American's Duty to Indemnify?

In the underlying case, Hartrick and Cathey claimed the foundation of the house had failed completely because Claremont did not properly prepare the soil or clear the land and did build a foundation of inadequate compressive strength that was not sufficiently thick and had no supporting piers. As resolved by the judgment in the underlying case, Claremont became legally responsible to pay damages to Cathey and Hartrick because Claremont breached its implied warranties of good and workmanlike construction and suitability for habitation. Neither Claremont nor its subcontractor, Custom Foundations, Inc., incurred liability for negligence or for violating section 17.46(a) of the DTPA.

It is undisputed that Hartrick and Cathey sued and recovered *only* from Claremont and that recovery was premised on Claremont's faulty and defective workmanship and resulting damage to Hartrick's and Cathey's house. They maintain Great American has a duty to indemnify because the jury in the underlying case awarded damages for defective construction work that resulted in "property damage" as defined by the Great American policy. For "property damage" to be covered, however, it must qualify as an "occurrence" under the terms of the policy.

### C. Were Damages Awarded for an "Occurrence"?

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define "accident." Texas courts have long construed the term "accident" to encompass negligently caused losses. *See Glover v. National Ins. Underwriters,* 545 S.W.2d 755, 763 (Tex.1977) (noting, in construing liability policy, that policy is "designed to protect one from the consequences of one's own negligence"); *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973) (holding that deliberate, and thus not negligent, trespass did not constitute "accident"); *Brightwell v. Rabeck,* 430 S.W.2d 252, 255 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.) ("The basic purpose underlying liability insurance is that the insurer (for a consideration) accepts the responsibility to discharge the insured's obligation, if any, arising through negligent tort committed by the latter."); *see also Data Specialties, Inc. v. Transcontinental Ins. Co.,* 125 F.3d 909, 912–13 (5th Cir.1997) (concluding, in context of duty to indemnify for insured's breach of contractual obligation and in construing Texas law, that purpose of CGL or standard liability policy is to provide compensation for adjudicated negligence liability).

In *Mid–Century Ins. Co. v. Lindsey,* the supreme court clarified the definition of "accident" by stating that,

> an injury is accidental if "from the viewpoint of the insured, [it is] not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by [the] insured, or would not ordinarily follow from the action or occurrence which caused the injury."

997 S.W.2d 153, 155 (Tex.1999) (construing "accident" in automobile liability policy and quoting from *Republic Nat'l Life Ins. Co.*

v. *Heyward*, 536 S.W.2d 549, 557 (Tex. 1976) (construing terms "accidental death" and "death by accidental means" in group life insurance policy)).

 In contending the property damage to the house did constitute an "accident" and "occurrence" under the terms of the policy, Hartrick and Cathey emphasize that Claremont's representative denied any intent to cause the results of Claremont's conduct—a house with a defective foundation. But *Mid–Century* shows that our analysis does not end with Claremont's stated intent.

 Intent or lack of intent is not dispositive of coverage. *See Mid–Century*, 997 S.W.2d at 155. An injury that results from voluntary and intentional conduct is not an "accident" and, therefore, not an "occurrence," merely because the insured, here Claremont, did not intend the result. *See id.* On the other hand, that Claremont intended to engage in the conduct giving rise to the injury does not negate an "accident," and thus, does not negate an "occurrence." *See id.* Rather, determining whether an injury is accidental inquires into *both* the insured's intent *and* the reasonably foreseeable effect, or consequences, of the insured's conduct. *Id.* To be accidental, an effect could not reasonably have been anticipated from the conduct that produced it, and the insured " 'cannot be charged with the design of producing' " the effect. *Id.* (quoting from *Cowan*, 945 S.W.2d at 827 (in turn quoting from *Heyward*, 536 S.W.2d at 555)).

*Mid–Century's* clarification of the term "accident" compels us to reject, at the outset, Hartrick's and Cathey's reliance on the *Massey* and *Sandifer* decisions by the Louisiana Third Circuit Court of Appeals. Although we have been urged to follow these cases as "well reasoned," the full scope of the Louisiana court's analysis lies in conclusorily equating property damage resulting from defective workmanship with a covered "accident." *Massey*, 733 So.2d at 75; *Sandifer*, 721 So.2d at 1024. Moreover, in reaching this result, the Third Circuit court rejected other Louisiana decisions, including its own, that conform more closely to Texas law. *See Sandifer*, 721 So.2d at 1022–23.

As determined in the underlying case, Claremont's voluntary and intentional conduct here was its failure to comply with the implied promises imposed on Claremont as a matter of law as a home builder, by not preparing the soil properly and not constructing the foundation properly. As defined by the jury charge in the underlying case, "failure to comply with a warranty" meant either: (1) not performing services in a good and workmanlike manner, or (2) selling a home that was not suitable for habitation. The jury charge further defined the "good and workmanlike manner" alternative as "that quality of work performed by one who has the knowledge, training or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work."

The injury to Hartrick's and Cathey's house was the pitching and heaving of the foundation and resulting damage to the house and loss of market value. Given the standard of proficiency in the building trade defined in the "failure to comply with a warranty" question in the jury charge, these injuries were the reasonably foreseeable results that would ordinarily flow from Claremont's failure to comply with its implied warranties to (1) prepare the soil and clear the land properly and (2) build a house on a foundation strong enough and thick enough to support the house. Although Claremont denied any intent to cause the consequences of not complying with its implied warranties, the jury's re-

sponses to the charge in the underlying case, and the resulting verdict and judgment in that case, establish that Claremont did not comply with them.

In urging us to conclude that Claremont's breach of warranty was an "accident" and, therefore, an "occurrence," Hartrick and Cathey emphasize that the jury in the underlying case did not find that Claremont's breach of warranty was committed "knowingly." *See* TEX. BUS. & COMM.CODE ANN. § 17.50(b)(1) (Vernon Supp.2001) (authorizing no more than three times actual damages on a finding of knowing conduct). That Claremont's conduct was not found to rise to the level of a "knowing" violation, sufficient to warrant treble damages for purposes of the DTPA analysis, does not preclude that the conduct produced a reasonably anticipated effect or consequence sufficient to negate the conduct's constituting an "accident" for purposes of coverage analysis mandated by *Mid–Century*.

█ By virtue of the verdict and judgment in the underlying case, Claremont is "charged with the design of producing" Hartrick's and Cathey's damages. *See Mid–Century*, 997 S.W.2d at 155. Claremont's lack of compliance with its implied warranties, i.e., promises imposed on Claremont as a matter of law, *see Humber*, 426 S.W.2d at 555, was not accidental, but the result of Claremont's not doing what it was required to do. By not doing what it was required to do, Claremont could reasonably anticipate the injury to Hartrick and Cathey.

Consistent with the supreme court's most recent interpretation of the term "accident," in *Mid–Century*, we hold that, because Claremont was responsible for the damages to Hartrick's and Cathey's home and could have reasonably foreseen those damages, Claremont's obligation to pay damages was not the result of an accident.

Because the judgment in the underlying case did not, therefore, award damages "caused by 'an occurrence[,]'" Great American had no duty to indemnify Claremont for the judgment in the underlying case. Having concluded there was no "occurrence," we need not address whether Claremont incurred liability for "property damage."

We overrule Hartrick's and Cathey's first issue presented. Having rejected the *Massey* and *Sandifer* decisions in analyzing whether Claremont incurred liability for "property damage" caused by an "occurrence," on the grounds these cases conflict with Texas law, we overrule Hartrick's and Cathey's second issue presented, in which they ask us to follow *Massey* and *Sandifer* in the interests of uniform interpretation of policy terms.

### Conclusion

We affirm the judgment of the trial court.