COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-389-CV
 
GREAT AMERICAN LLOYDS                                                        
 APPELLANT
INSURANCE COMPANY
V.
MARK MITTLESTADT AND                                                        
   APPELLEES
KIMBERLY MITTLESTADT
------------
FROM THE 211
TH DISTRICT COURT OF DENTON
COUNTY
------------
OPINION
------------
I. Introduction
Appellees Mark and Kimberly Mittlestadt sued appellant Great American
Lloyds Insurance Company to recover on a judgment rendered against Moneyline
Construction, an insurer of Great American. On September 19, 2001, the trial
court heard evidence and rendered a judgment in favor of the Mittlestadts in the
amount of $110,664, plus attorney's fees and costs. Great American appeals from
that judgment. We reverse and render.
II. Factual Background
On April 2, 1996, the Mittlestadts entered into a written agreement to
purchase real property and a house from Moneyline. At the closing, they learned
that the house encroached on a pipeline easement owned by Citgo. According to
the Mittlestadts, Moneyline then induced them to close on the contract by
representing to them that Citgo had agreed to permit the house to remain
permanently on the easement. The Mittlestadts closed on the sale in reliance on
that representation. After the sale, however, they discovered that Citgo would
only allow the house to remain on the easement on a conditional and limited
basis.
The Mittlestadts brought suit against Moneyline (hereinafter "the
underlying suit"), alleging it was negligent in constructing the house on
the pipeline easement, constructing the house in reliance on a plot plan that
did not reflect the easement, and representing that Citgo would allow the house
to remain on the easement. In addition to negligence, the Mittlestadts brought
causes of action for fraud, violations of the Texas Deceptive Trade Practices
Act, and breach of contract. They also brought similar claims against
Professional Home Design and Mark Phillips, who prepared the plot plan used by
Moneyline in building the house.
After suit was filed, Moneyline contacted Great American for coverage
under its liability insurance policy. Great American initially defended
Moneyline in the lawsuit, but later withdrew its defense based on its conclusion
that the Mittlestadts were not alleging any damages potentially covered under
the insurance policy. According to Great American, the Mittlestadts had not
alleged any "property damage" caused by an "occurrence" as
required by the insurance policy.
The Mittlestadts' lawsuit against Moneyline and the other defendants
proceeded to a bench trial on February 22, 2000. Only the Mittlestadts presented
evidence in the case, and Professional Home Design and Mark Phillips did not
appear. Following the Mittlestadts' presentation of evidence, Moneyline moved
for directed verdict on their fraud, DTPA, and breach of contract claims. The
trial court granted the motion, leaving the Mittlestadts with only their
negligence causes of action as potential bases for recovery. Following argument,
the trial court rendered judgment for the Mittlestadts, and against Moneyline
and the other defendants, in the amount of $80,000 for actual damages and
$30,664 for prejudgment and postjudgment interest. No findings of fact and
conclusions of law were entered in the underlying suit.
After obtaining the judgment against Moneyline, the Mittlestadts filed
suit against Great American to recover on the judgment (the "indemnity
suit"), alleging that the judgment was covered under Moneyline's policy
with Great American and that Great American had wrongfully declined to pay the
judgment. Following a bench trial, the trial court rendered judgment in favor of
the Mittlestadts. This appeal followed.
III. The Duty to Indemnify
As Great American contends, the main issue presented in this appeal is
whether Great American has a duty to indemnify Moneyline for the Mittlestadts'
damages. In support of its contention that no duty to indemnify exists, Great
American argues that the trial court's finding of "property damage" is
erroneous and that the trial court erred in making this fact finding because
whether "property damage" exists is an issue of law to be reviewed de
novo. We agree that the issue of whether Great American has a duty to indemnify
is a legal issue to be reviewed de novo, see Collier v.
Allstate County Mut. Ins. Co., 64 S.W.3d 54, 58 (Tex. App.--Fort Worth
2001, no pet.), and that the determination of whether "property
damage" occurred is also an issue of law. See Hartrick v.
Great Am. Lloyds Ins. Co., 62 S.W.3d 270, 274 (Tex. App.--Houston [1st
Dist.] 2001, no pet.) ("[W]hen a policy permits only one interpretation, we
construe [a contract] as a matter of law and enforce it as written."); GT
& MC, Inc. v. Tex. City Refining, Inc., 822 S.W.2d 252, 255-56 (Tex.
App.--Houston [1st Dist.] 1991, writ denied) ("If
the written instrument is worded so that it can be given a certain definite
meaning or interpretation, then it is not ambiguous, and the court will construe
the contract as a matter of law.").
Unlike the duty to defend, which arises when a petition seeking damages
alleges facts that potentially support claims covered by a liability policy, the
duty to indemnify arises from proven, adjudicated facts. See
Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821
(Tex. 1997) ("The duty to indemnify is triggered by the actual facts
establishing liability in the underlying suit."); Hartrick,
62 S.W.3d at 275 (same); see also Ins. Co. of N. Am. v.
McCarthy Bros. Co., 123 F. Supp.2d 373, 377 (S.D. Tex. 2000) (stating that
in Texas, the underlying liability facts, rather than the
legal theory of liability, trigger the duty to indemnify). No duty to indemnify
arises unless the underlying litigation establishes liability
for damages covered by the insuring agreement of the policy. See
Employers Cas. Co. v. Block, 744 S.W.2d 940, 944 (Tex. 1988), disapproved
on other grounds by State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d
696, 714 (Tex. 1996); Hartrick, 62 S.W.3d at 275; see
also Malone v. Scottsdale Ins. Co., 147 F. Supp.2d 623, 629 (S.D. Tex.
2001). Consequently, because a duty to indemnify arises only if the underlying
litigation establishes liability, we only look to the facts established in the
underlying litigation to determine if a duty to indemnify exists.(1)
Under the general liability policy, Great American's duty to indemnify
arises if "property damage" is caused by an "occurrence." An
"occurrence" is defined as "an accident, including continuous or
repeated exposure to substantially the same general harmful conditions."
Great American's policy defines "property damage" as:

 a.   physical injury to
 tangible property, including all resulting loss of use of that property. All
 such loss of use shall be deemed to occur at the time of the physical injury
 that caused it; or
 b.   loss
 of use of tangible property that is not physically injured. All such loss of
 use shall be deemed to occur at the time of the "occurrence" that
 caused it.

In light of this policy, the trial court in the indemnity suit found
that the Mittlestadts suffered "property damage" in the form of a
"loss of use of a portion of the residence" and "an injury to
tangible property." Based on these findings, the trial court concluded that
Great American had a duty to indemnify.
In reviewing the evidence established in the underlying suit, we
conclude that it does not show that the property at issue suffered a physical
injury.(2) The evidence in the underlying suit
only showed that the Mittlestadts relied on Moneyline's representation in
closing on the house; the house was not physically damaged. As a result, we are
left to decide whether "property damage" resulted from a "loss of
use of tangible property."
Again, in deciding whether a "loss of use" occurred, we limit
our review to the underlying litigation to determine whether the evidence in
that case established liability for damages covered by the insuring agreement. Cowan,
945 S.W.2d at 821; Hartrick, 62 S.W.3d at 275. The
evidence established in the underlying suit does not support a conclusion that a
duty to indemnify exists based on the "loss of use" of the property.(3)
While the Mittlestadts introduced evidence in the underlying suit supporting
recovery for loss of value to the property, Texas courts have repeatedly held
that economic losses do not constitute "property damage" within the
meaning of a general liability policy. See State
Farm Lloyds v. Kessler, 932 S.W.2d 732, 737 (Tex. App.--Fort Worth 1996,
writ denied); Terra Int'l, Inc. v. Commonwealth Lloyd's Ins.
Co., 829 S.W.2d 270, 272-73 (Tex. App.--Dallas 1992, writ denied); Houston
Petroleum Co. v. Highlands Ins. Co., 830 S.W.2d 153, 156 (Tex.
App.--Houston [1st Dist.] 1990, writ denied); Lay
v. Aetna Ins. Co., 599 S.W.2d 684, 686-67 (Tex. Civ. App.--Austin 1980,
writ ref'd n.r.e.). Consequently, we hold that as a matter of law no loss of use
occurred and, thus, no property damage occurred and that the trial court erred
in determining that Great American had a duty to indemnify Moneyline. We sustain
issue three with regard to the challenge to the trial court's finding of
"property damage."(4)
In its fifth issue, Great American contends the trial court erred in
conditionally awarding $3,000 in attorney's fees to the Mittlestadts upon the
denial or successful defense of Great American's petition for review to the
Supreme Court of Texas. In light of our ruling on issue three, we believe that
this issue is now moot. Thus, we overrule it.
IV. Conclusion
Having concluded that Great American has no duty to indemnify Moneyline,
we reverse the trial court's judgment. Because there is only one result that
should have been rendered in this case, we render judgment that the Mittlestadts
take nothing in their action against Great American.

 
 
 
  
 
 
 

                                                       
   SAM J. DAY
                                                       
   JUSTICE
PANEL A: CAYCE, C.J.; DAY and LIVINGSTON, JJ.
DELIVERED: June 5, 2003

1. Although Great American contends in its first issue
that the trial court should not have considered facts and evidence that differed
from the underlying suit, we do not need to address that issue given that we
only consider the facts establishing liability in the underlying suit to
determine whether the trial court erred in concluding that Great American owed a
duty to indemnify. In doing so, we review the record from the underlying suit,
which includes the pleadings, the trial transcript, the insurance policy, and
the judgment, all of which were before the trial court in the indemnity suit.
2. The evidence in the indemnity suit also did not
establish that there was a physical injury to the property. To the contrary,
Mark Mittlestadt admitted that the encroachment of the house on the easement did
not physically harm the house and that Citgo has not disturbed the property.
3. The evidence in the indemnity suit also does not
support the conclusion that a loss of use occurred. Mark Mittlestadt testified
in the indemnity suit that Citgo has never prevented him and his wife from using
any portion of the house, and the Mittlestadts' expert also testified that the
house is "obviously habitable. The problem . . . in terms of
value and marketability is it is virtually unsalable."
[Emphases added.] While the Mittlestadts' expert responded affirmatively to the
Mittlestadts' attorney's question regarding whether his appraisal of the value
of the house would be $134,000 "if the homeowner had the permanent
use of the portion of the structure in the easement," the evidence did
not establish that a loss of use had in fact occurred. [Emphasis added.]
Moreover, the same expert in the underlying suit based his calculation of
damages on the difference between the value of the home with the easement and
the value of the home without the easement. And at closing in the underlying
suit, the Mittlestadts asked the trial court to award damages based on "the
difference between the value of the house as it would be had it been located out
of the easement and the value of the house located within the easement."
The damages requested in the underlying suit amounted to the same requested in
the indemnity suit.
4. In light of our decision on issue three, we need not
address Great American's first, second, and fourth issues or the remainder of
issue three. See Tex. R. App. P. 47.1.