**Opinion issued September 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00174-CR

———————————

**STEPHEN CLARK WEBB, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1389676**

---

### MEMORANDUM OPINION ON REHEARING

Stephen Clark Webb filed a motion for reconsideration en banc. We withdraw our opinion and judgment and substitute the following opinion and judgment in their place. The motion for reconsideration en banc is rendered moot by our substitution of the new opinion, and is therefore denied. *Hudson v. City of*

*Houston*, 392 S.W.3d 714, 717 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 272 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

A jury convicted Webb of indecency with a child.[1] In eight issues, Webb contends that the trial court erred by admitting inadmissible evidence and denying his motion for a mistrial. We affirm.

## Background

In 1996, Webb dated (and later married) the mother of the complainant, Jane,[2] and moved into Jane's home. Jane was ten years old at the time. After several years, Webb divorced Jane's mother and moved out of the house. As an adult, Jane disclosed to her boyfriend, her family, and police that Webb had sexually assaulted her when she was a child. Webb was arrested for aggravated sexual assault of a child.[3]

Before trial, the trial court granted a motion in limine preventing the State from soliciting evidence that Webb had given anyone other than Jane illegal drugs. At trial, the State called Jane, who recounted that when she was a child Webb had physically assaulted her, performed inappropriate massages on her, made her mow the lawn topless, shown her pornography, given her drugs and alcohol, and

---

[1]     TEX. PENAL CODE ANN. § 21.11 (West 2011).
[2]     We refer to the complainant by this pseudonym to protect her identity.
[3]     TEX. PENAL CODE ANN. § 22.021 (West Supp. 2014).

performed various other indecent acts. The State also asked Jane if Webb ever gave his younger son any illegal drugs—a question that violated the motion in limine. Webb objected before Jane could answer; the court sustained the objection and instructed the jury to disregard the question. Webb moved for a mistrial; the court denied his motion.

The State also called Jane's boyfriend, who recounted that Jane, now an adult, would have terrible nightmares. During the nightmares, she would cry out Webb's name. He described how she eventually told him about the abuse. Webb objected to this testimony as inadmissible hearsay; the court overruled the objection.

The State's other witnesses included the investigating police officer and a child-abuse expert. The State then rested.

During his case-in-chief, Webb called Jane's mother to testify about Webb's behavior during their marriage and to discredit portions of Jane's story. On cross-examination, the State asked Jane's mother whether Webb was in another relationship when he began a relationship with her. The State also asked about Webb's relationships with his two sons from an earlier marriage. Webb objected to the relevance of this evidence; the court overruled his objections.

Webb called several other witnesses and then rested. The jury convicted him of a lesser-included offense, indecency with a child. Punishment was assessed at

3

ten years' incarceration, suspended for ten years' community supervision. Webb timely appealed.

## Evidentiary Objections

In his first five issues, Webb contends that the trial court improperly admitted hearsay testimony and irrelevant evidence.

### A.    Standard of review

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). We will uphold the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Tillman*, 354 S.W.3d at 435; *Walker*, 321 S.W.3d at 22.

To preserve the issue of erroneously admitted evidence, a party must make a timely and specific objection and receive a ruling from the trial court. TEX. R. APP. P. 33.1; *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). The party must object every time the evidence is offered. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

"The erroneous admission of a hearsay statement constitutes non-constitutional error that is subject to a harm analysis." *Coleman v. State*, 428 S.W.3d 151, 162 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). "We do not

overturn a conviction if, after examining the record as a whole, we have fair assurance that the error did not influence the verdict or had but a slight effect." *Id.*

## B.    Statements during and after Jane's nightmares

In his first issue, Webb contends that the trial court erred by admitting testimony from Jane's boyfriend that during violent nightmares she would cry out, "No, don't, [Webb]. Don't. [Webb], no, no." Webb objected to these statements as hearsay; the trial court overruled this objection, concluding that they fell within the excited-utterance exception to the rule against hearsay.

In his second issue, Webb contends that the trial court erroneously admitted hearsay statements that Jane made to her boyfriend about the nightmares shortly after awakening from one. The trial court also admitted the statements as excited utterances.

We will review the rule against hearsay, examine these issues in reverse order, and, ultimately, overrule both.

### 1.    The rule against hearsay and the excited-utterance exception

Hearsay is any out-of-court statement "offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). In Texas, the rule covers both explicit assertions and "any matter implied by a statement, if the probative value of the statement as offered flows from declarant's belief as to the matter." TEX. R.

5

EVID. 801(e). Hearsay is inadmissible, unless the statement qualifies for an exception to the rule against hearsay. *See* TEX. R. EVID. 801–805.

In this case, the trial court concluded that Jane's sleep statements (issue one) and statements immediately after the nightmare (issue two) fell under the excited-utterance exception to the rule against hearsay. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2). "[U]nder the excited-utterance exception, the startling event may trigger a spontaneous statement that relates to a *much earlier* incident." *McCarty v. State*, 257 S.W.3d 238, 240 (Tex. Crim. App. 2008).

### 2.     Explanation of nightmare

We begin with Webb's second issue: whether the trial court erroneously admitted hearsay statements that Jane made to her boyfriend about the nightmares shortly after awakening from one. Before asking the witness to disclose what Jane said, the State laid the following predicate for the excited-utterance exception:

Q:     And when you woke [Jane] up, was she calm?

A:     The exact opposite of calm.

Q:     Describe how she was.

A:     She was in full tears, still pushing me away . . . .

Q:     Is this the first time you really pressed her?

6

A: Yes, ma'am.

Q: And did she finally tell you what she was dreaming, having a nightmare about?

A: Yes, ma'am.

Over Webb's objection, the prosecutor asked what Jane said "while she was still upset and crying." The witness responded:

A: She—she said that—I kept asking what had he done to you, and she was crying at this point. I was—I was crying as well, but she said that he had—that he had—he had done things to her and he had touched her where he shouldn't have, and we both started crying and—

Q: Now, when you say "he," who was she talking about?

A: [Webb].

Jane made statements about the abuse she had just relived in her nightmare. Given that she had just woken up from her nightmare and was "upset," "crying," "in full tears," and "the exact opposite of calm," the trial court did not abuse its discretion by concluding that she was under the stress of this event when making these statements. *See McCarty*, 257 S.W.3d at 240 (statements made when re-startled may be excited utterances).

Webb argues that a nightmare cannot be a startling event for purposes of the excited-utterance exception. He distinguishes this case from *Apolinar v. State*, 155 S.W.3d 184 (Tex. Crim. App. 2005). There, the declarant was beaten unconscious; he spent four days either unconscious or heavily medicated, and thus did not have

the opportunity to reflect before discussing the assault. *Apolinar*, 155 S.W.3d at 189–90. The court held that, when he was finally able to speak about the assault, he was still startled by it, and thus his statements were excited utterances. *Id.* Webb distinguishes this case from *Apolinar* because the startling event here is the nightmare, not the trauma.

We acknowledge this distinction, but it does not affect our analysis because *Apolinar* does not abolish the general principle that the startling event "need not necessarily be the crime itself." *Hunt v. State*, 904 S.W.2d 813, 816 (Tex. App.—Fort Worth 1995, pet ref'd); *accord McCarty*, 257 S.W.3d at 240. For example, in *Hunt* a television program rekindled a child's fear that she would become pregnant from sexual abuse suffered three months prior. *Hunt*, 904 S.W.2d at 816. And in *McCarty*, a benevolent tickle deeply upset a child because her abuser also tickled her "but went much further." *McCarty*, 257 S.W.3d at 240. In both cases, the trial court did not err by admitting the ensuing statements as excited utterances. *Id.*; *Hunt*, 904 S.W.2d at 816.

Webb argues that cases like *McCarty* are distinguishable because the startling event "had nothing to do with who was tickling [the declarant]." But this is a distinction without a difference. In both *Hunt* and *McCarty*, the declarant was startled by an event that reminded her of prior trauma. This case presents the same fact pattern.

Finally, Webb complains that the record does not specify whether Jane described events from her real-world memories or from her dream. This may (or may not) be a relevance issue, but Webb only objected to hearsay. Accordingly, we do not address this argument. *See* TEX. R. APP. P. 33.1.

We overrule Webb's second issue.

### 3. Sleep talking

We next turn to Webb's first issue: whether the trial court properly overruled his hearsay objection and admitted Jane's sleep talk—"No, don't, [Webb]. Don't. [Webb], no, no"—during the nightmare. But we do not reach this issue because any error from the admission of the sleep talk was harmless. The statements made after she awoke provide much more detailed and direct evidence about what she was dreaming and why. Thus, any tendency of the sleep talk to reveal the contents of the dream is harmless because this other evidence provides stronger and more detailed evidence of the same matter asserted.

And this was not the only evidence against Webb. In addition to Jane's boyfriend's testimony, Jane herself gave detailed testimony regarding various sexual assaults the she endured and a child-abuse expert explained to the jury how Jane's experiences corresponded to common patterns in long-term sexual assault cases.

We conclude that any error in overruling Webb's hearsay objection to the sleep talk was harmless. Accordingly, we overrule Webb's first issue.

## C.	Defendant's relationships

In his third through fifth issues, Webb contends that the trial court erroneously admitted evidence that Webb was living with another woman while dating Jane's mother and that Webb had poor relationships with his two sons. Webb argues that this evidence was not relevant.

This evidence was solicited several times during the trial. At times, Webb failed to object. Webb failed to object to the following testimony from Jane's mother concerning the start of her relationship with Webb:

Q:	At the time you met [Webb], was he married?

A:	No.

Q:	Was he in a relationship?

A:	Yes.

Q:	And who was he in a relationship with?

A:	Her name was . . . .

He also did not object to the following question and answer from the same witness:

Q:	And [while you were dating Webb] he was living part of the time out in California with [Webb's significant other]?

A:	Yes.

He also failed to timely object to the relevance of the following testimony from Jane's mother about Webb's relationships with his sons:

> Q:      Now, at the time that you married [Webb], you indicated he had two children . . . correct?
>
> A:      Yes.
>
> Q:      Did he have any type of . . . relationship[s] with his sons? How would you describe his relationship[s] with his sons?
>
> A:      It seemed okay.

To successfully preserve the erroneous admittance of evidence for appellate review, a party must timely object every time the evidence is offered. *Ethington*, 819 S.W.2d at 858. Assuming without deciding that the admission of this evidence was in error, Webb did not preserve the error because he did not consistently object when the State solicited this testimony. We overrule Webb's third through fifth issues.

## Motion for Mistrial

In his sixth issue, Webb contends that the trial court erred by denying his motion for a mistrial.

### A.     Standard of review

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim.

App. 2009) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). A prompt instruction from the trial judge is usually enough to cure the error and avoid the need for a mistrial. *Wesbrook v. State*, 29 S.W.3d 103, 115–16 (Tex. Crim. App. 2000). Whether an error requires a mistrial must be determined by the particular facts of the case. *Ladd*, 3 S.W.3d at 567.

When assessing action on a motion for mistrial, "[d]eterminations of historical fact and assessment of witness credibility and believability are left almost entirely to the discretion of the trial judge, and where there is conflicting evidence there is no abuse of discretion if the motion is overruled." *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000). An appellate court views the evidence in the light most favorable to the trial court's ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

**B. Instruction to disregard**

Before trial, the trial court granted a motion in limine prohibiting the State from asking if Webb had distributed illegal drugs to any person other than Jane. The court told the State that it should approach the bench before asking any question precluded by the motion.

The State violated the motion in limine when it asked Jane: "Do you know if [Webb] gave [his younger son] drugs?" The State did not approach the bench

before asking the question. Immediately, Webb objected. At the ensuing bench conference, the State apologized. The trial court then issued the following instruction to the jury: "You are instructed to disregard that question and not consider it for any reason whatsoever." Webb then timely moved for mistrial, which the trial court denied.

To determine if the trial court abused its discretion by denying a motion for mistrial, we use the three-factor test announced in *Mosley v. State*, 983 S.W.2d 249, 259–60 (Tex. Crim. App. 1998). We look to three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *Carballo v. State*, 303 S.W.3d 742, 748 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see Archie v. State*, 340 S.W.3d 734, 740 (Tex. Crim. App. 2011) (applying *Mosley* factors to denial of motion for mistrial).

For the first *Mosley* factor, we examine "the severity of the misconduct, or in other words, the magnitude of the prejudicial effect of the prosecutor's [misconduct]." *Archie*, 340 S.W.3d at 740. A prosecutor's attempt to circumvent a motion in limine is serious misconduct. *See Scruggs v. State*, 782 S.W.2d 499, 502 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). But the magnitude of the prejudicial effect of this action was somewhat mitigated by the particular circumstances of this case. First, the prosecutor promptly moved on and did not

revisit the issue. Second, other evidence linked Webb to illegal drugs. Jane testified that Webb had given her drugs and alcohol. And Webb asked Jane's mother on direct examination about various CPS and FBI investigations into "rampant drug abuse and pornography in the house."

For the second *Mosley* factor, "the reviewing court considers the character of the measures adopted to cure the misconduct." *Archie*, 340 S.W.3d at 741. In this case, the trial court promptly instructed the jury to disregard the question. An instruction to disregard is presumed effective unless the particular facts imply otherwise. *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988).

For the third *Mosley* factor, "the reviewing court looks to the certainty of conviction absent the misconduct." *Archie*, 340 S.W.3d at 741. The State's evidence included Jane's testimony recounting her abuse, her boyfriend's testimony about her nightmares and outcry, a police officer's testimony about his investigation of the case, and expert-witness testimony explaining how the facts of this case match traditional patterns of abuse. The defense focused on Webb and Jane's family, who disagreed with various parts of Jane's story. Thus, this case came down to a credibility determination: did the jury believe Jane was telling the truth? The State's improper question did not significantly affect the believability of Jane's account because: (1) the question was posed to Jane, not to a corroborating witness; (2) Jane had already testified that Webb gave her illegal drugs; (3) the

14

state and federal investigations provided additional evidence of drugs in the home, and (4) drug use formed only a small part of Jane's story.

Given our analysis of the *Mosley* factors, we conclude that the State's misconduct did not warrant the extraordinary remedy of a mistrial. Accordingly, we overrule Webb's sixth point of error.

## Cumulative Effect

In his seventh and eighth issues, Webb contends that the cumulative harm of the alleged errors warrants reversal of his conviction. We have already concluded that any error in admitting Jane's sleep talk was harmless, and we have found no other reversible error in the trial court's evidentiary rulings or in its decision to deny Webb's motion for mistrial. Accordingly, we overrule Webb's seventh and eighth issues.[4]

## Conclusion

We affirm the judgment of the trial court.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[4] The State argues that cumulative harm from multiple errors is not a proper issue for appeal. Because there is no cumulative harm, we do not address this argument.