**Jon A. HANSON, Danny Hanson, and Promise Renée Hanson a/n/f Danny Hanson, Appellants,**

v.

**REPUBLIC INSURANCE COMPANY, Appellee.**

**No. 01–98–00042–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 14, 1999.

Richard Schechter, David Matthiesen, Houston, for Appellants.

Michael Phillips, Evelyn T. Ailts, Houston, for Appellee.

Panel consists of Justices COHEN, HEDGES, and TAFT.

## OPINION

TIM TAFT, Justice.

This is an appeal from a declaratory judgment in an automobile insurance coverage case. The trial court rendered summary judgment in favor of the appellee, Republic Insurance Company. Appellants, Jon A. Hanson, and his children, Danny Hanson and Promise Renée Hanson,[1] claim the trial court misapplied the family-

---

1. We refer to Jon A. Hanson individually as "Mr. Hanson" and to each of the children individually by their first names. We refer to appellants, Jon A. Hanson, and his children, Danny Hanson and Promise Renée Hanson, collectively as "the Hansons."

member exclusion and the uninsured/underinsured-motorist offset clause of the Standard Texas Personal Auto Policy. The trial court construed these provisions in determining that Republic had no duty to indemnify Mr. Hanson for a $7,754,364 judgment entered after Promise Renée sued Mr. Hanson, on Danny's behalf, seeking damages for injuries Danny sustained in an automobile collision. The Hansons also challenge the summary judgment on the grounds that the trial court misapplied a credit for liability benefits received from a third party and erred by allowing Republic to assert its policy defenses. We affirm.

## Factual Background

Republic insured two Hanson family vehicles under a single, standard-form Texas Personal Auto Policy issued to Mr. Hanson as named insured. The declared limit of liability of the policy for liability coverage was $100,000. The declared limit of liability for uninsured/underinsured motorist coverage was also $100,000. The Personal Injury Protection coverage under the policy had a limit of $2,500.

Danny was seriously injured in a three-car collision in 1991. He was 15 years old. Danny was in the rear seat of Mr. Hanson's 1989 Chevrolet Camaro, one of two vehicles insured under the Republic policy. Mr. Hanson was driving. As Mr. Hanson was executing a left-hand turn, he collided with an oncoming vehicle driven by Clifton Corson. This collision resulted in a second collision between Mr. Hanson's Camaro and a third vehicle. All three drivers carried the liability insurance required by the Safety Responsibility Act then in effect, former TEX.REV.CIV. STAT. ANN. art. 6701h § 1(10) (Vernon 1993).[2] Police at the accident scene ticketed Mr. Hanson for failure to yield the right-of-way. Danny's injuries

from the accident were massive and permanently disabling.

Soon after the accident, the insurance carrier for the Corson vehicle tendered $25,000 to the Hansons. This was the total of liability coverage afforded by the Corson policy.

## Procedural Background

Within a year of the accident, Republic filed an interpleader action in the 215th District Court of Harris County, to deposit $100,000 into the court's registry as the full amount of its uninsured/underinsured limits. Republic paid $2,500 to the Hansons under the personal injury protection (PIP) provisions of the policy.

In February 1993, Promise Renée sued her father on Danny's behalf in Cause No. 93–05655, *Promise Renée Hanson a/n/f Danny Hanson v. Johnney Allen Hanson,* in the 133rd District Court of Harris County ("the underlying personal-injury action"), claiming that Mr. Hanson's negligence caused Danny's injuries. Republic provided legal counsel to defend Mr. Hanson in that lawsuit. In issuing a demand to Republic for the full limits of the policy for that lawsuit, Mr. Hanson claimed the policy limits exceeded the $100,000 Republic had previously deposited in the registry of the 125th District Court as the full amount of its limits under the uninsured/underinsured provisions of the policy.

In August 1993, Republic filed this action for declaratory relief in this case to determine its duties under the policy. Republic relied on an offset clause in the uninsured/underinsured coverage provisions of the policy to argue that it had exhausted its policy limits by tendering the $100,000 into the registry of the 215th District Court for Danny's benefit, and by tendering $2,500 to Danny under the PIP policy provisions. In addition, Republic

---

2. Act of June 19, 1993, 68th Leg., R.S., ch. 534 § 3, 1983 Tex. Gen. Laws 3122, 3126, *repealed by* Act of September 1, 1995, 74th Leg., R.S., ch. 165 § 1, sec. 601.072, 1995 Tex. Gen. Laws 1025, 1710 (currently codified at TEX. TRANSP. CODE ANN. § 601.072 (Vernon 1999)).

maintained no more than the statutory minimum of $20,000 was available for liability coverage because of the policy's family-member exclusion. Republic moved for summary judgment, or partial summary judgment, early in the case, but was denied this initial request.

In March 1995, Mr. Hanson countersued Republic in this case by asserting counterclaims for breach of contract and several extra-contractual claims.[3] Early in 1996, the trial court abated and later severed Mr. Hanson's extra-contractual claims pending resolution of issues on the contract. The extra-contractual claims remain severed pending this appeal.

The underlying personal-injury action resulted in a negligence verdict against Mr. Hanson. The judgment signed in that case on November 22, 1996 awarded Danny $7,754,364 in actual damages plus interest against his father.

Early in 1997, Republic again sought summary judgment in this case on the grounds it had no duty to indemnify Mr. Hanson for the $7,754,364 judgment in the underlying personal-injury action. Republic argued once more that it had exhausted its policy limits by having deposited the $100,000 in uninsured/underinsured benefits into the registry of the 215th District Court. Republic claimed this tender triggered the offset clause of the uninsured/underinsured motorist provision of the policy. Republic also claimed the family-member exclusion barred any recovery under the liability coverage of the policy beyond the $20,000 required by article 6701h § 1(10) of the former Motor Vehicle Safety Act.

In responding to the motion, Mr. Hanson claimed Republic was estopped to dispute coverage, because it had breached its duty to settle the underlying personal-injury action, and challenged whether the family-member exclusion and the offset applied. In moving for summary judgment,

Mr. Hanson advanced the same arguments, and asked to be awarded judgment "in the available policy amount of $20,000," and $150,000 in attorney's fees. Danny's and Promise Renée's joint motion for summary judgment raised similar arguments.

The trial court rendered summary judgment in Republic's favor, which all three Hanson family members challenge in this appeal. They also claim the trial court erred by denying their motions for summary judgment.

## Standards of Review

The issues before us arise in the context of several legal standards: those governing summary judgments, the interpretation of insurance contracts, and additional considerations applicable to statutorily mandated insurance coverage.

### A. Summary Judgment

Well-settled principles govern review of summary judgments in insurance coverage cases. *State Farm Fire & Cas. v. Vaughan,* 968 S.W.2d 931, 933 (Tex. 1998); *Sears, Roebuck & Co. v. Commercial Union Ins. Corp.,* 982 S.W.2d 151, 153 (Tex.App.—Houston [1st Dist.] 1998, no pet.). When a motion for summary judgment raises multiple grounds, we may affirm if any ground is meritorious. *Cincinnati Life v. Cates,* 927 S.W.2d 623, 625 (Tex.1996). Further, when both parties move for summary judgment and the trial court grants one motion and denies the other, we may determine all questions presented, including the propriety of overruling the losing party's motion. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *State Farm Mut. Auto. Ins. Co. v. Brown,* 984 S.W.2d 695, 697 (Tex.App.—Houston [1st Dist.] 1998, pet. denied).

### B. Interpretation of Insurance Contracts

---

3. The extra-contractual claims included negligence, gross negligence, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act (DTPA), the Insurance Code, and the Unfair Claims Settlement and Practices Act.

Insurance contracts are subject to the same rules of construction as ordinary contracts. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997); *Brown*, 984 S.W.2d at 698. Accordingly, when a policy permits only one interpretation, we will construe it as a matter of law and enforce it as written. *Sears, Roebuck*, 982 S.W.2d at 154; *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex.1992). We construe the policy against the insurer and in favor of the insured only when policy terms permit more than one interpretation and are thus ambiguous. *Vaughan*, 968 S.W.2d at 933; *Upshaw*, 842 S.W.2d at 633. We need not apply the contra-insurer rule here, as the Hansons contend. As in our recent opinion in *Brown*, both parties dispute only the effect of certain policy provisions, and not their meaning. *See Brown*, 984 S.W.2d at 698.

### C. Statutorily Mandated Insurance Coverage

We are further mindful that the insurance coverage at issue is statutorily mandated. Article 5.06(1) of the Insurance Code requires the Texas Department of Insurance (TDI) to adopt a policy form and endorsements for each type of motor vehicle insurance governed by articles 5.01 through 5.12 of the Insurance Code. TEX. INS.CODE ANN. art. 5.06(1)-(2) (Vernon Supp.1999); *Brown*, 984 S.W.2d at 699. Texas courts must interpret TDI-approved policy provisions as written, but provisions that conflict with express statutory requirements or purposes are invalid. *Mid–Century Ins. Co. v. Kidd*, 997 S.W.2d 265, 271–72 (Tex.1999).

### Analysis

The Hansons' challenges include arguments that the trial court violated statutory mandates for automobile insurance, and thus contravened public policy, in adopting Republic's interpretations of the policy. We begin our analysis by addressing these mandates.

### Statutorily Mandated Coverage— Automobile Insurance

The former Motor Vehicle Safety Act, now the Transportation Code, and the Insurance Code regulate automobile insurance coverage in Texas. The Motor Vehicle Safety Act, now the Transportation Code, mandates automobile insurance that Texas drivers must carry, while the Insurance Code mandates the coverage that Texas automobile insurers must provide in policies offered to Texas drivers, but which they may decline.

Texas drivers *must carry* liability insurance coverage in the minimum statutory amounts, and policies must provide the coverage contemplated by the statutes. *See Kidd*, 997 S.W.2d at 267–69. The statutory minimum applicable to the Hanson policy for liability coverage was $20,000 for "bodily injury to or death of one person in any one accident." TEX.REV.CIV. STAT. ANN. art. 6701h § 1(10) (Vernon 1993) (current version at TEX. TRANSP. CODE ANN. § 601.072(a)(1) (Vernon 1995)). The Hanson policy provided for $100,000 in liability coverage.

Insurers who issue automobile policies in Texas *must provide* coverage, in the policy, for personal injury protection (PIP) and uninsured/underinsured motorists (UM/UIM). *See* TEX. INS.CODE ANN. art. 5.06—3(a) (Vernon 1981) (PIP); TEX. INS. CODE ANN. art. 5.06—1(1) (Vernon 1981) (UM/UIM). UM/UIM coverage indemnifies the insured only for those damages proximately caused by the negligence of another driver. *See Kidd*, 997 S.W.2d at 268-69, 274-76. PIP coverage does not consider fault and thus covers damages that may also be attributable to the insured's own negligence. *Id.* In contrast to liability coverage, which drivers must carry, the insured may decline PIP and UM/UIM coverage by signing a written rejection. *Kidd*, 997 S.W.2d at 267–68; TEX. INS.CODE ANN. arts. 5.06—3(1), 5.06—1(1). The Hanson policy included both UM/UIM and PIP coverage. The declared limit for

UM/UIM coverage was $100,000, the same as under liability coverage, and $2,500 for PIP coverage.

**Enforcement of the Family–Member Exclusion**

■ In their first issue, the Hansons maintain the trial court erred by enforcing the family-member exclusion in Part A of the policy. Part A controls liability coverage. The "Insuring Agreement" of Part A states, in part: "We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." Part A defines "covered person" as "[y]ou or any family member for the ownership, maintenance or use of any auto or trailer." Mr. Hanson is a "covered person" because he was driving the Camaro when the collision happened. As a result of the $7,754,-364 judgment in the underlying negligence suit, Mr. Hanson became "legally responsible" for the "bodily injuries" to Danny. Their relationship as father and son triggered another policy provision, commonly known as the family-member exclusion.

The family-member exclusion states: "We do not provide liability coverage for you or any family member for bodily injury to you or any family member." The policy defines "family member" as a resident of the household and related "to you by blood, marriage, or adoption." It is undisputed that the exclusion applies to Danny. As written, the exclusion bars Mr. Hanson from seeking indemnity under the policy for the damages awarded Danny.

The Hansons maintain the exclusion is void as against public policy because it eliminates coverage that is mandated by former article 6701h § 1(10), which required minimal liability coverage of $20,-000 for bodily injury to one person per accident.

In moving for summary judgment, Republic maintained the family-member exclusion validly excludes liability coverage

*in excess* of the statutory limits of $20,000. Republic argued it had no duty to indemnify Mr. Hanson beyond $20,000. In response, Mr. Hanson insisted the exclusion was completely invalid.

The Supreme Court of Texas has invalidated the family-member exclusion, but only to the extent it removed the minimal $20,000 of mandatory liability coverage under former article 6701h § 1(10). *Liberty Mut. Fire Ins. Co. v. Sanford,* 879 S.W.2d 9, 10 (Tex.1994); *National County Mut. Fire Ins. Co. v. Johnson,* 879 S.W.2d 1, 6 (Tex.1993); *State Farm Mut. Auto. Ins. Co. v. Nguyen,* 920 S.W.2d 409, 410–11 (Tex.App.—Houston [1st Dist.] 1996, no writ).

Under the *Sanford* and *Johnson* precedents, the family-member exclusion limits Republic's duty to indemnify Mr. Hanson to the $20,000 minimum mandated by former article 6701h. *See Nguyen,* 920 S.W.2d at 410–11. In *Nguyen,* we concluded the insured was entitled to $20,000 in liability coverage, and not $100,000 as she claimed, because the family-member exclusion validly excluded coverage beyond $20,000 for a family member. 920 S.W.2d at 411. We reach the same conclusion here. Accordingly, we hold that the trial court properly granted summary judgment in Republic's favor on the grounds it had no duty to indemnify Mr. Hanson beyond $20,000 under the liability coverage of the policy.

We overrule the Hansons' first issue.

**Enforcement of the Uninsured/Underinsured Motorist Offset**

In their second issue, the Hansons claim the trial court erred by enforcing the uninsured/underinsured motorist offset clause in Part A. The Hansons' arguments require interpretation of parallel provisions of the policy, Part A, which controls liability coverage, and Part C, which controls UM/UIM coverage, portions of which follow:

PART A—LIABILITY
COVERAGE
INSURING AGREEMENT

PART C—UNINSURED/
**UNDERINSURED COVERAGE**
INSURING AGREEMENT

We will pay damages for bodily injury ... for which any **covered person** becomes legally responsible because of an auto accident. ... Our duty to settle or defend ends when our *limit of liability* has been exhausted.

**LIMIT OF LIABILITY**

If the limit of liability shown in the Declarations for this coverage is for combined bodily injury and property damage liability, it is our *maximum limit of liability* for all damages resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. **Covered persons;**
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

We will apply the *limit of liability* to provide any separate limits required by law for bodily injury. ... However, this provision will not change the *total limit of liability*.

*Any payment under this coverage to or for a **covered person** will reduce any amount that person is entitled to recover for the same damages under the Liability Coverage of this policy.*

We will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury sustained by a **covered person** ... caused by an accident.

LIMIT OF LIABILITY

If the limit of liability shown in the Declarations for this coverage is for combined bodily injury and property damage liability, it is our *maximum limit of liability* for all damages resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. **Covered persons;**
2. Claims made;
3. Policies or bonds applicable;

4. Vehicles or premiums shown in the Declarations; or
5. Vehicles involved in the auto accident.

*Any payment under the Uninsured/Underinsured Motorist Coverage of this Policy to or for a **covered person** will reduce any amount that person is entitled to recover under this coverage.*

(Bolded emphasis in original; italics and bolded italics emphasis added).

As addressed above, a "covered person" under these provisions means the insured ("[y]ou") "or any family member for the ownership, maintenance or use of any auto or trailer." Danny was thus a "covered person" under the insuring agreements and the italicized offset clauses for the liability and UM/UIM coverages. The declaration page of Mr. Hanson's standard policy listed the $100,000 of liability coverage as "combined bodily injury and property damage liability." Accordingly, under the provisions governing both liability and UM/UIM coverage (Parts A and C), the declared $100,000 limit was the maximum amount available for all damages resulting from the collision in which Danny was

injured. Each coverage part further states that the maximum limit of liability "is the most [Republic] will pay regardless of the number of" covered persons, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the accident.[4]

Pursuant to the italicized offset clauses, payment on behalf of Danny under either Part A, liability coverage, or Part C, UM/UIM coverage, would reduce the amount available as liability coverage for the same damages. The offset clauses thus underscore that $100,000 is the maximum amount of liability coverage available under the policy for any one person in any one accident, and for all damages resulting from any one accident. Payment of $100,-000 under the liability provisions as dam-

---

4. The UM/UIM provisions add "regardless of the number of ... 3. Policies or bonds available." Article 5.06—1(2)(d) of the Insurance Code requires insurers to include this provision in the UM/UIM provisions of automobile policies. Tex. Ins.Code Ann. art. 5.06—1(2)(d) (Vernon Supp.1999).

ages for an accident thus reduces available UM/UIM coverage to zero.[5] Payment of $100,000 as damages for an accident under the UM/UIM coverage likewise reduces available liability coverage to zero.

Republic moved for summary judgment on the grounds it had exhausted its policy limits through the $100,000 deposited into the registry of the 215th District Court, and that this triggered the offset clause in Part C, the UM/UIM provisions of the policy. Republic also claimed the family-member exclusion barred any recovery under the liability coverage of the policy beyond the $20,000 required by former article 6701h § 1(10).

The Hansons raise several challenges to Republic's reliance on the italicized offset clause in Part C, the UM/UIM coverage portion of the policy. All the challenges attempt to engraft more coverage than the $100,000 unequivocally set by the policy as the maximum amount available for all damages resulting from the collision in which Danny was injured.

■ The Hansons first claim that the UM/UIM offset clause does not apply because the $100,000 Republic paid into the registry of the 215th District Court was for Danny's benefit. The Hansons argue that although the offset clause precludes any further liability coverage payments "to" Danny, the clause does not apply to preclude liability coverage payments "for" Mr. Hanson because he is a different "covered person." This argument ignores that the offset reduces available liability coverage by any payments made under UM/UIM coverage, whether *"to or for"* a covered person. Republic's tender of $100,-000 into the registry of the 215th District Court was clearly for the benefit of Mr. Hanson as a covered person.

■ The Hansons also contend that enforcing the offset violates public policy.

They emphasize that Republic tendered the $100,000 as its UM/UIM limits, not liability limits, and that insurers must provide, and insured carry, liability coverage for family members in the statutorily mandated $20,000 minimum under the *Sanford* and *Johnson* precedents. The Hansons argue that enforcing the UM/UIM offset impermissibly reduces the statutorily mandated liability coverage to zero, and claim they are entitled to "at least" the statutory minimum of $20,000 as additional liability coverage under the *Sanford* and *Johnson* precedents. Republic contends it is immaterial whether it paid the $100,000 as UM/UIM or liability coverage because of the mutual offset clauses in each of the coverage parts. Republic further contends the Hansons seek double recovery under both the UM/UIM and liability coverages, which the policy and the law preclude.

In *Kidd*, the Supreme Court of Texas upheld the validity of a different offset provision in the UM/UIM provisions against similar challenges. Under the offset at issue in *Kidd*, as in this Court's decision in *State Farm Mut. Auto Ins. Co. v. Brown*, an insured could not recover the same loss under both UM/UIM and PIP coverages of the standard Texas automobile policy. *Kidd*, 997 S.W.2d at 271–72, 276–77; *Brown*, 984 S.W.2d at 699–700.

■ The test of the validity of offsets in the UM/UIM coverage part of the policy is whether they "prevent recovery of actual damages or reduce UM protection below the minimum limits required by the UM statute." *Kidd*, 997 S.W.2d at 270–71. The UM/UIM offset at issue here, which mirrors an identical offset in the liability portion of the policy, operates to reduce the available limit of liability coverage under the policy by any amount paid as damages for an accident under the UM/UIM coverage. We find nothing in the UM/UIM offset that even attempts to pre-

---

**5.** *Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 380 (Tex.1989), clarified that in the case of multiple policies, payment under the liability coverage part of the standard automobile policy reduces the amount of actual damages accruing to the injured party, not the amount available as UM/UIM coverage.

vent recovery of actual damages to less than the policy limits or to reduce the UM/UIM protection required by article 5.06—1. The only effect of the UM/UIM offset at issue here, and its counterpart in the liability portion of the policy, is to bar recovery for the same damages under two different coverages afforded by a policy. *See Kidd,* 997 S.W.2d at 271–72. The offset clauses thus serve only as nonduplication provisions. *Id.*

We next address whether the nonduplication provision here, the UM/UIM offset against liability coverage, violates public policy. The Hansons maintain it does because enforcing the offset reduces the available liability coverage to zero when Mr. Hanson was required to carry at least $20,000 of liability coverage under former article 6701h § 1(10). The Hansons rely on the rationale of the *Sanford* and *Johnson* precedents, which invalidated the family-member exclusion because it reduced the same statutorily mandated liability coverage to zero. *See Sanford,* 879 S.W.2d at 10; *Johnson,* 879 S.W.2d at 6.

The Hansons' arguments do not consider that the offset in the UM/UIM coverage part of the policy (Part C) is a nonduplication provision that is mirrored in the liability coverage part of the policy (Part A). Together, these provisions provide a maximum of only $100,000 available as coverage for all damages resulting from the collision in which Danny was injured. As explained above, each coverage part emphasizes that this maximum "is the most [Republic] will pay regardless of the number of" covered persons, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the accident. This statement of maximum available coverage, with the additional "regardless of the number of ... 3. Policies or bonds available" is mandated and thus expressly approved, by Article 5.06—1(2)(d) of the Insurance Code for the UM/UIM provisions of automobile policies. TEX. INS.CODE ANN. art. 5.06—1(2)(d).

As explained above, on payment of damages under either the liability or the UM/UIM coverage parts, the corresponding offset provisions reduce the available insurance proceeds available for the same damages. To reduce available coverage to zero under either coverage part thus requires payment of the stated maximum amount of insurance coverage under the policy.

This case differs, therefore, from the *Sanford* and *Johnson* precedents and this Court's opinion in *Nguyen,* in which giving effect to the family-member exclusion would have actually reduced available coverage to zero. In contrast to those cases, in which the insurers argued there was no coverage, reducing available liability coverage to "zero" occurs here only on payment of the full amount of coverage for a covered person under the UM/UIM coverage. Republic does not dispute that it owes this maximum amount of coverage, which it has tendered into the registry of the 215th District Court. We agree with Republic that because the mutual offset clauses appear in each of the coverage parts, it is immaterial whether the $100,000 was paid as UM/UIM or liability coverages. Thus, while Republic tendered the $100,000 as its UM/UIM limits, $20,000 of this amount implicitly applied as meeting the minimum level of $20,000 required as liability coverage under former article 6701h § 10. We reject the Hansons' contention that tendering the $100,000 as UM/UIM limits constitutes a judicial admission that precludes Republic from claiming a portion of the payment as satisfying the statutory minimum. To conclude that Republic owes an additional $20,000 is to create coverage where there is none, by authorizing an impermissible double recovery, in excess of the stated policy limits, for the same damages.

The Hansons protest that Mr. Hanson paid two separate insurance premiums for two separate coverages, liability under Part A of the policy, and UM/UIM, under Part C, which entitles them to full cover-

age under both parts. This argument conflicts with the repeated provisions in the policy, which the Hansons do not challenge, which unequivocally state that $100,000 is Republic's maximum amount of liability for all damages for any one accident. The Hansons' argument also lacks merit for the reasons stated in *Kidd* and *Brown,* which rejected similar contentions. *Kidd,* 997 S.W.2d at 274–75; *Brown,* 984 S.W.2d at 699.

We conclude that the trial court properly enforced the UM/UIM offset as a valid nonduplication of coverage provision and overrule point of error two.

In their third point of error, the Hansons contend the trial court violated the *Stracener* decision by granting Republic a credit against UM/UIM benefits for the $25,000 in liability payment benefits paid by the insurer for Corson, the third driver involved in the accident that injured Danny. Nothing in the record reflects that the trial court granted a credit to Republic in rendering summary judgment. Error, if any, was not preserved. TEX.R.APP. P. 33.1(a).

We overrule point of error three.

In points of error four and six, the Hansons claim Republic's handling of the defense of the underlying personal-injury action either estops Republic from asserting its defenses in this coverage action as a matter of law, or creates fact issues concerning waiver and estoppel to assert policy defenses. In our opinion, these arguments are not properly before us because they relate to the extra-contractual issues that were severed from the coverage dispute in order for the Hansons to appeal the trial court's resolution of the coverage claims.

■ To the extent these issues may be properly before us, however, we first note that we have rejected the Hansons' arguments as attempting to create coverage beyond the stated limits of the policy. An insured may not rely on the doctrines of waiver and estoppel to create or expand coverage beyond the terms contracted for in the policy, when no coverage exists as a matter of law. *See Texas Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 603 (Tex. 1988); *Daca, Inc. v. Commonwealth Land Title Ins. Co.,* 822 S.W.2d 360, 364 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

■ Furthermore, with respect to the Hansons' claim that Republic violated its *Stowers* [6] duty, we note that Mr. Hanson's demand on Republic was a demand for more than the $100,000 limit. An insurance company has a duty to accept reasonable settlement offers. *Insurance Corp. of America v. Webster,* 906 S.W.2d 77, 79 (Tex.App.—Houston [1st Dist.] 1995, writ denied.) To trigger a *Stowers* duty, a demand must be within the policy limits. *See State Farm Lloyds Ins. Co. v. Maldonado,* 963 S.W.2d 38, 41 (Tex.1998). Mr. Hanson's demand for funds beyond policy limits did not trigger a *Stowers* duty.

We overrule points of error four and six.

In their fifth point of error, the Hansons argue the trial court erred by denying their motion for summary judgment. Our conclusion that summary judgment for Republic was proper compels us to overrule the Hansons' point of error on that basis.

We overrule point of error five.

### Conclusion

We affirm the judgment of the trial court.

---

6. *G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved.)