Reversed and Remanded and Opinion filed August 8, 2006








Reversed and
Remanded and Opinion filed
August 8, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00072-CV

____________

 

HARRY JANKOWIAK and PAM JANKOWIAK,
Individually and as next Friend of LACY JANKOWIAK, Appellants

 

V.

 

ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY, Appellee

 



 

On Appeal from the 127th
District Court

Harris County, Texas

Trial Court Cause No. 02-59935-A

 



 

O P I N I O N

This is an appeal from a summary judgment denying a claim
for uninsured motorist coverage.  Harry and Pam Jankowiak, individually and as
next friends of their minor daughter, Laci Jankowiak, (the AJankowiaks@) filed suit
against Allstate Property & Casualty Insurance Company (AAllstate@) and others for bodily
injuries Laci suffered in a car accident.  The trial court granted Allstate=s motion for
summary judgment and the Jankowiaks appeal, arguing (1) the trial court
improperly construed the insurance policy and, (2) if the trial court properly
construed this contract, it violates public policy.  We reverse and remand.








Factual and Procedural Background

On June 9, 2002, Laci Jankowiak was a passenger in a car
being driven by Daniel Dellasala, Jr. when they were involved in a car accident
with Alejandra Salas, an uninsured motorist.  The Jankowiaks sued Salas, Daniel
Dellasala, Sr. as next friend of Daniel Dellasala, Jr., Allstate (the Dellasala
insurer), and their own insurer.  The Jankowiaks alleged both drivers were at
fault and that Laci suffered injuries greatly exceeding the full amount of the
Dellasala insurance policy=s liability and uninsured/underinsured
motorist (AUM@) limits.[1]

The Jankowiaks settled with their own insurer for their
policy=s $20,000 maximum
UM coverage.  The Jankowiaks also settled with Allstate for the Dellasala
policy=s $25,000 limit
for liability coverage.  Despite these recoveries, the Jankowiaks allege these
payments fall short of Laci=s actual damages.  Thus, the Jankowiaks
sought an additional $25,000 from Allstate under the policy=s limit of
liability for UM coverage.

Allstate moved for summary judgment, arguing the policy
allowed only one recovery for each person injured in one accident.  The trial
court severed the Jankowiaks= claim for UM benefits and granted
Allstate=s motion for
summary judgment.  On appeal, the Jankowiaks contend the trial court improperly
construed the policy and, if the trial court=s construction was
proper, the contract violates public policy.[2]








Standard of Review

To prevail on a traditional motion for summary judgment, a
defendant must establish  the absence of a genuine issue of material fact, so
that  judgment should be granted as a matter of law.  Tex. R. Civ. P. 166a(c).  We review the granting of a motion
for summary judgment de novo, taking as true all evidence favorable to the
nonmovant and making all reasonable inferences and resolving any doubts in the
nonmovant=s favor.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  A defendant, as the movant, is entitled to
summary judgment if at least one element of the plaintiff=s theory of
recovery is disproved, or if the defendant pleads and conclusively establishes
each essential element of an affirmative defense, thereby rebutting the
plaintiff=s cause of action.  Am. Tobacco Co., Inc. v.
Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).

Legislative History OF Uninsured/Underinsured
Motorist Insurance

In 1967, the legislature mandated that no automobile
liability insurance policy could be issued in Texas without uninsured motorist
protection unless the insured expressly rejected such coverage.  Act of May 3,
1967, 60th Leg., R.S., ch. 202, ' 1, 1967 Tex. Gen.
Laws 448 (amended 2005) (current version at Tex.
Ins. Code Ann. Art. 5.06-1 (Vernon Supp. 2005)).  The stated intent of
the legislation was Ato provide a means of protecting the
conscientious and thoughtful motorist against [a loss caused by negligent,
financially irresponsible motorists].@  Id.








The statute originally provided coverage only for bodily
injury sustained by an uninsured motorist.  However, in 1977, the legislature
amended the statute to provide four distinct coverages: (1) uninsured
motorist bodily injury coverage; (2) uninsured motorist property
coverage; (3) underinsured motorist bodily injury coverage; and
(4) underinsured motorist property coverage.  Act of May 6, 1977,
65th Leg., R.S., ch. 182, ' 1, 1977 Tex Gen. Laws 370 (amended 2005)
(current version at Tex. Ins. Code Ann.
art. 5.06-1).[3] 
The amount of these coverages could not, then or now, be less than that
prescribed by the Texas Motor Vehicle Safety-Responsibility Act.  Act of May 3,
1967, 60th Leg., R.S., ch. 202, ' 1, 1967 Tex. Gen
Laws 448 (amended 2005) (current version at Tex.
Ins. Code Ann. art. 5.06-1).  However, the insured had the prerogative
to purchase additional UM coverage as long as such coverage did not exceed the Alimits of
liability specified@ in the bodily injury or property damage Aliability
provisions of the insured=s policy.@  Act of May 6,
1977, 65th Leg., R.S., ch. 182, ' 1, 1977 Tex. Gen.
Laws 370.








Regarding the question of whether an insured could recover
under more than one coverage in a single policy, the statute expressly provided
for an insured, who purchased collision and UM property damage coverages, to
recover under either, but not both.  Id.[4] 
By its silence, the statute seemed to infer that all other combinations of
coverages were permissible.  See Mid-Century Ins. Co. v. Kidd, 997
S.W.2d 265, 274 (Tex. 1999) (stating lack of statutory regulation of personal
injury protection (PIP) double recoveries suggests such issues should be
resolved by contract between the parties).  Two years later, the prohibition
against combining collision and UM property damage coverages was amended to
provide that if Aneither coverage is sufficient alone to
cover all damage resulting from a single occurrence, the insured may recover
under both coverages.@  Act of May 24, 1979, 66th Leg., R.S.,
ch. 626, ' 1, 1979 Tex. Gen. Laws 1418 (amended 2005) (current
version at Tex. Ins. Code Ann.
art. 5.06-1).  Throughout the various permutations of the statute, the
legislature has neither intimated nor suggested that bodily injury liability
and UM bodily injury coverages cannot both be recovered where neither is
sufficient alone to cover the insured=s actual damages. 
The legislature=s silence suggests this issue should be
determined by the contract.  Kidd, 997 S.W.2d at 274.

Contract Construction

In their first issue, the Jankowiaks claim the trial court
erred when it interpreted the Dellasala insurance policy to mean $25,000 is
Allstate=s maximum limit of
liability for Laci=s injuries under both the UM and liability
coverages.  We interpret insurance policies according to the rules of
contractual construction.  Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124
S.W.3d 154, 157 (Tex. 2003).[5] 
Policy provisions that are inconsistent with express statutory requirements or
purposes are invalid.  Kidd, 997 S.W.2d at 271B72.[6]

Allstate rests its
position on the following language in the bodily injury liability section of
the policy:

The limit of
liability shown in the Declarations for Aeach person@ for bodily injury
liability is our maximum limit of liability for all damages for bodily injury
sustained by any one person in any one motor vehicle accident. . . . This is
the most we will pay regardless of the number of . . . [c]laims made . . . [or]
[v]ehicles involved in the accident.








This
language also appears in the policy=s UM coverage. 
The declarations page lists the limits of liability for both UM and liability
coverages at $25,000 per person.  Thus, Allstate contends that $25,000 is an
absolute policy limit.  In other words, Allstate argues it satisfied both its
liability and UM bodily injury obligations under the policy by tendering a
single payment of $25,000 to the Jankowiaks.

When construing an insurance policy, we are obliged to read
the contract as a whole and, thus, give effect to the written expression of the
parties= true intent.  State
Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995).  AIndeed, courts
must be particularly wary of isolating from its surroundings or considering
apart from other provisions a single phrase, sentence, or section of a
contract.@  Id. (citing Forbau v. Aetna Life Ins. Co.,
876 S.W.2d 132, 133B34 (Tex. 1994)).  Here, the declarations
page lists separate policy limits for (1) liability coverage, (2)
uninsured/underinsured motorist coverage, (3) collision coverage, (4) other
than collision coverage, (5) towing and labor costs coverage, and (6) rental
reimbursement coverage.  Each coverage specifies its own policy limit.  For
example, the policy limit for Atowing and labor costs coverage@ is $40.00, but it
would be absurd to suggest that a payment of $40.00 for towing would relieve
Allstate of its responsibility to pay damages under other coverages listed in
the policy.[7]

Moreover, the Amaximum limit of
liability@ language upon which Allstate relies so heavily is
found not only in the liability coverage section of the policyCit is repeated
under numerous coverages.  For example, just like the bodily injury liability
coverage section of the policy, the medical payments and personal injury
protection (PIP) coverages state:

The limit of liability shown in the
Declarations for this coverage is our maximum limit of liability for each
person injured in any one accident.  This is the most we will pay regardless of
the number of . . . [c]laims made . . . [or] [v]ehicles involved in the
accident.








We must construe this policy as a whole.  Beaston,
907 S.W.2d at 433.  Because this Amaximum limit of
liability@ language is repeated for each coverage, we interpret
it not as a maximum, policy-wide, or absolute global limit, but rather as a
maximum limit of recovery for each specific coverage.  That is, this language
limits one person=s receipt of coverage benefits for bodily
injury to $25,000 and, in a separate section of the policy, it operates again
to limit one person=s recovery of UM benefits to $25,000 for
bodily injuries sustained in one accident.

For example, a policy limit for PIP of $2,500 would be the Amaximum limit of
liability@ owed by the insurer for that coverage.  But no one
could reasonably contend that a payment of $2,500 for PIP damages would relieve
the insurer of its responsibility to reimburse the insured for liability and UM
coverages up to their respective policy limits.

Nevertheless,
Allstate attempts to bolster its position by relying upon an offset provision
in the general liability coverage portion of the policy that states:

Any payment under
the Uninsured/Underinsured Motorists Coverage or the Personal Injury Protection
Coverage of this policy to or for a covered person will reduce any amount that
person is entitled to recover under this coverage.

Because
a recovery under UM coverage Awill reduce any amount@ the insured is
entitled to recover under liability coverage, Allstate contends the intent of
the parties was to limit recovery under the policy to an absolute maximum of
$25,000.








We first observe that there are no express reciprocal
offset provisions in the policy.  In other words, while payment under the UM
coverage will reduce any amount the insured is entitled to recover under the
liability coverage, payment under the liability coverage does not expressly
reduce the amount the insured is entitled to recover under the UM coverage.  It
would seem a strange contract indeed that provides liability coverage may be
reduced by payments of UM damages, but UM coverage is not reduced by payments
of liability damages.  Thus, if we were to adopt Allstate=s interpretation
of the offset provision, the issue of whether an insured could recover a
maximum of $25,000 or $50,000 would depend on the order of the payment of his
or her claims.  If a $25,000 UM claim were paid first, it would offset any
potential responsibility to pay a liability claim.  However, if a $25,000
liability claim were paid first (as is the case here), the insurer would still
be responsible for UM claims up to an additional $25,000.  While we find
Allstate=s interpretation of
the offset provision to be unreasonable, we note that Allstate tendered $25,000
to satisfy the bodily injury liability claim.  Thus, even under Allstate=s interpretation
of the contract, the offset provision does not absolve it of the Jankowiaks= UM claim.[8]

Further, we find a more reasonable construction of the
offset provision to simply prevent an insured from recovering in excess of his
or her actual damages.  See Allstate Ins. Co. v. Bonner, 51 S.W.3d 289,
292 (Tex. 2001) (stating insurer would have been liable for UM claim after
paying damages under PIP coverage if insured=s actual damages
had exceeded amount already paid in PIP benefits).  In other words, UM payments
for bodily injury and/or PIP payments will reduce the amount the insured is
entitled to recover under the policy=s bodily injury
liability coverage in the sense that an insured cannot obtain a windfall Adouble recovery.@  For example, if
the insured=s actual damages were $35,000, and the insurer paid
$5,000 in PIP coverage and $25,000 in UM bodily injury coverage, the most the
insured could recover under his or her bodily injury liability coverage would
be $5,000.

 35,000.00     (actual
damages)

 30,000.00     (5,000
PIP payment + 25,000 UM payment)

 5,000.00     (remaining liability under bodily injury
liability coverage)

Thus, as the
policy states, 

Any payment under
the Uninsured/Underinsured Motorists Coverage or the Personal Injury Protection
Coverage of this policy to or for a covered person will reduce any amount that
person is entitled to recover under this coverage.

This
construction of the offset provision would be consistent with the plain
language of the UM limit of liability provision limiting recovery of UM damages
to the lesser of:  (1) AThe difference between the amount of a
covered person=s damages for bodily injury . . . and the amount paid
or payable to that covered person for such damages, by or on behalf of persons
or organizations who may be legally responsible; and@ (2) A[t]he applicable
limit of liability for this coverage.@  (Emphasis
added).   








Finally, Allstate cites the First Court of Appeals opinion Hanson
v. Republic Insurance Company to support its argument.  5 S.W.3d 324 (Tex.
App.CHouston [1st
Dist.] 1999, pet. denied).[9] 
However, the opinion of our sister court is not controlling authority here; it
is useful only as persuasive authority.  Eubanks v. Mullin, 909 S.W.2d
574, 576 n.1 (Tex. App.CFort Worth 1995, no writ).  Moreover, we
find Hanson unpersuasive.  Thus, we are not obliged to follow its
rationale.








In that case, Jon Hanson caused a car accident that left
his son, Danny, permanently disabled.  Hanson, 5 S.W.3d at 326.  Danny
obtained a judgment against his father exceeding $7.7 million.  Id. at
327.  The Hansons= insurance policy included liability and
UM coverages,[10]
each limited to $100,000.  Republic Insurance Company deposited $100,000 into
the court=s registry as the full amount of its UM coverage
limits.  Id. at 326.  The Hanson court found the $100,000
Republic tendered for payment of underinsured motorist claims precluded any
further recovery under the policy=s liability
coverage because its payment of liability coverage offset what could be recovered
under UM coverage, and vice versa.  Id. at 330.  The court relied on the
plain wording of the policy.  Essentially, the court interpreted this policy as
providing a single, global policy maximum coverage of $100,000 for all damages
resulting from one accident.  Id. at 332B33 (rejecting the
Hansons= argument that
paying separate premiums for each coverage should entitle them to complete
coverage under both sections by stating, AThis argument
conflicts with the repeated provisions in the policy . . . which unequivocally
state that $100,000 is Republic=s maximum amount of liability for all
damages for any one auto accident.@).  The Hanson court
explained this statement of maximum available coverage Ais mandated and
thus expressly approved@ by Texas Insurance Code article
5.06-1(2)(d).[11] 
Id. at 332.  However, the offset provisions cited by the court do not
offset liability coverage against UM coverage, or vice versa.

  The liability
coverage offset provision relied upon by the Hanson court states:

PART ACLIABILITY

COVERAGE

INSURING AGREEMENT

We will pay damages for bodily injury . . . for which any covered
person becomes legally responsible because of an auto accident. . . .  Our duty
to settle or defend ends when our limit of liability has been exhausted.

LIMIT OF LIABILITY

If the limit of liability shown in the Declarations for this coverage
is for combined bodily injury and property damage liability, it is our maximum
limit of liability for all damages resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. Covered persons;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate limits
required by law for bodily injury. . . .  However, this provision will not
change the total limit of liability.








Any payment under
this coverage to or for a covered person will reduce any amount that person is
entitled to recover for the same damages under the Liability Coverage of this
policy.

Id. at 329B30.  (Emphasis
added).  It must be kept in mind that the liability coverage in the Hanson policy
was for combined bodily injury and property damage creating,
essentially, one limit of liability per coverage regardless of whether damages
were for injury to property or body; while, in a typical accident, an insured
would present two claimsCone for bodily injury and one for property
damage.  The italicized offset provision cited above simply provides that A[a]ny payment
under this [liability] coverage to a covered person will reduce any amount that
person is entitled to recover for the same damages under the Liability Coverage
of this policy.@  Thus, if the insurer paid $40,000 in
property damage, only $60,000 would remain to pay any subsequent bodily injury
claims.

Nothing in the Hansons= policy suggests
that payment of liability claims would reduce the amount recoverable under UM
claims.  In short, we find the Hanson opinion was wrongly decided, and
we decline to follow it.

Returning to the policy in this appeal, when read in its
entirety, the insurance contract does not limit Laci=s recovery to
$25,000; instead, the Amaximum limit of liability@ language relied
upon by Allstate works only within its respective coverage to limit the amount
of liability under that particular coverage.  Allstate, citing to Hanson,
would have us read the limit of liability sections together to mean the limit
of liability for each coverage is really the limit of liability for both UM and
liability coverages.  This, we cannot do. The limit of liability sections
appear to be purposefully separated. We are obliged to interpret this
unambiguous language as it is written.  Purvis Oil Corp. v. Hillin, 890
S.W.2d 931, 935 (Tex. App.CEl Paso 1994, no writ).  








Thus, we find the Amaximum limit of
liability@ language in the Dellasala policy does not reach
outside the bounds of each separate coverage to limit other coverages within
the policy. We also conclude that no other express provision limits UM coverage
once liability limits have been paid to one person for injuries sustained in
one accident.  We hold the trial court erred in its construction of the
Dellasala policy.  Accordingly, we sustain the Jankowiaks= first issue.

 Public Policy

Even if our analysis above is incorrect and the trial court
properly construed the Dellasala policy, we find that construction violates
public policy.

Whether a contract violates public policy is a question of
law we review de novo.  Lawrence v. CDB Servs., Inc., 44 S.W.3d 544, 555
(Tex. 2001), superceded by statute on other grounds as stated in Storage
& Processors, Inc. v. Reyes, 134 S.W.3d 190, 192 (Tex. 2004).  Texas
expresses its public policy through its statutes.  Tex. Commerce Bank, N.A.
v. Grizzle, 96 S.W.3d 240, 250 (Tex. 2002).  Therefore, Ato determine
whether a contract violates public policy, we consider the policies underlying
any applicable statutes.@  Lawrence, 44 S.W.3d at 555.  The
appropriate test when considering whether a contract violates public policy Ais whether the
tendency of the agreement is injurious to the public good, not whether its
application in a particular case results in actual injury.@  Hazelwood v.
Mandrell Indus. Co., Ltd., 596 S.W.2d 204, 206 (Tex. Civ. App.CHouston [1st
Dist.] 1980, writ ref=d n.r.e.).  Public policy can be a vague
and uncertain term, and it is up to the power of the lawmaking body to define. 
Grizzle, 96 S.W.3d at 250 (quoting Lawrence, 44 S.W.3d at 553).  A[C]ourts are apt
to encroach upon the domain of that branch of the government if they
characterize a transaction as invalid because it is contrary to public policy,
unless the transaction contravenes some positive statute or some well‑established
rule of law.@  Id. (quoting Lawrence, 44 S.W.3d at
553).








The legislature has mandated a minimum of $20,000 in UM
coverage in every state automobile liability insurance policy, unless such
coverage has been waived by the insured in writing.[12] 
Tex. Ins. Code Ann. art.
5.06-1(1); Kidd, 997 S.W.2d at 268.  UM coverage protects an insured who
is Alegally entitled
to recover damages from owners or operators of uninsured or underinsured motor
vehicles because of bodily injury, sickness, or disease, including death, or
property damage@ resulting from an accident, but who
cannot recover from the person responsible for the accident.  Tex. Ins. Code Ann. art. 5.06-1(1); Progressive
County Mut. Ins. Co. v. Sink, 107 S.W.3d 547, 554 (Tex. 2003).  The purpose
of UM coverage is to protect conscientious motorists from financial loss caused
by negligent and financially irresponsible motorists.  Stracener v. United
Servs. Auto. Ass=n, 777 S.W.2d 378, 382 (Tex. 1989). 
UM coverage, therefore, is designed to place the injured claimant in a position
as though a financially irresponsible motorist had been insured.  Kidd,
997 S.W.2d at 272.  Article 5.06-1 is to be liberally construed to give full
effect to this public policy.  Stracener, 777 S.W.2d at 382.  Any
insurance contract provision that is inconsistent with or does not further the
purpose of article 5.06-1 is invalid.  See id. at 383B84 (finding
intermediate appellate courts= decisions involving article 5.06-1
operated to limit the possibility that an injured insured can recover actual
damages and therefore frustrated the purpose of that statute).

To recover UM
benefits, Athe insured must be able to show fault on the part of
the uninsured motorist and the extent of the resulting damages. . . .@  Sprague v.
State Farm Mut. Auto. Ins. Co., 880 S.W.2d 415, 416 (Tex. App.CHouston [14th
Dist.] 1993, writ denied) (quoting Franco v. Allstate Ins. Co., 505
S.W.2d 789, 792 (Tex. 1974)).  Under the Dellasala policy=s UM coverage,
Allstate:

will pay damages
which a covered person is legally entitled to recover from the owner or
operator of an uninsured vehicle because of bodily injury sustained by a
covered person . . . caused by an accident.








Laci
is a Acovered person@ under this policy
because she was an occupant of the Dellasala vehicle at the time of the
accident.  The extent, if any, of Salas= fault in the
accident affects Laci=s ability to recover UM damages.  Laci=s ability to
recover also depends upon the extent of her actual damages.

Despite these unresolved fact issues, Allstate contends the
trial court properly granted summary judgment because the Dellasala policy
prohibits recovery of any UM benefits once the liability coverage maximum for
bodily injury is paid to Aone person@ in Aone auto accident.@  Allstate argues
that the number of claims made or vehicles involved in the accident cannot be
used to duplicate recovery.








In Mid‑Century Insurance Company of Texas v. Kidd,
the jury awarded $13,000 to the plaintiff in actual damages after the insurer
had already paid $10,000 in PIP benefits.  997 S.W.2d at 267.  The Texas
Supreme Court upheld a provision allowing the insurer to offset payment under
the UM coverage by the amount already paid under PIP coverage in order to
prevent recovery in excess of actual damages.[13] 
Id. at 277.  Although the Kidd Court stated that offset
provisions are generally enforceable, it also held its prior relevant caselaw[14]
Astand[s] for the
proposition that offsets in the UM section of the policy are ineffective to
the extent that they prevent recovery of actual damages or reduce UM
protection below the minimum limits required by the UM statute.@[15]  Id. at
270 (emphasis added).  Thus, UM protection must put the injured party in the
same position as if the uninsured driver had insurance coverage.  While
Allstate has paid Lacy $25,000 as part of its liability coverage, it has
not paid any part of the UM coverage that Salas= insurance company
would have paid to Laci had he been insured.  Moreover, Laci=s damages are
unknown and could greatly exceed amounts already paid by Allstate and other
responsible parties.  See Am. Motorists Ins. Co. v. Briggs, 514 S.W.2d
233, 236 (Tex. 1974) (stating liability under more than one insurance policy is
joint and several to the extent of plaintiff=s actual damages).








An insured, when selecting and paying for coverage, shows
an intent to protect against a variety of risks.  Liability coverage protects
an injured party against the insured driver=s negligence,
while UM coverage Aindemnifies insureds against only those
damages proximately caused by the other [uninsured] driver=s negligence.@  See In re
Tex. Ass=n of Sch. Bds., Inc., 169 S.W.3d 653,
660 (Tex. 2005) (quoting Kidd,  997 S.W.2d at 275) (stating UM and PIP
coverages are complementary and indemnify insureds against different risks and
that such coverage is consideration for the premiums paid).  The Dellasala
policy reflects this by obligating Allstate to pay liability coverage when Aany covered person
becomes legally responsible because of an auto accident,@ and to pay UM
coverage when Aa covered person is legally entitled to recover from
the owner or operator of an uninsured motor vehicle because of bodily injury .
. . caused by an accident.@  Allstate=s argument that it
has exhausted the applicable policy limits by paying $25,000 in liability
coverage ignores the result thatCalthough the
Dellasalas included UM coverage in their policy and did not waive that coverage
in writing as required by statuteCLaci Jankowiak, an
insured, is allowed to recover only for Daniel Dellasala, Jr.=s legal
responsibility for the accident, and not for Salas= negligence in
causing the accident.  See Stracener, 777 S.W.2d at 384 (stating that by
purchasing UM coverage along with basic liability coverage Athe insured has
expressed an intent not only to protect others from his or her own negligence
but also to protect that person=s own family and guests from the
negligence of others@).  The Jankowiaks are not seeking
recovery in excess of actual damages,  They seek only to recover actual damages
incurred.

We consider this issue in terms of whether the Dellasala
policy, as read by Allstate and the trial court, contains terms that are injurious
to the public good, and in light of Texas public policy favoring the protection
of conscientious motorists from financial loss caused by negligent and
financially irresponsible motorists.  Under this standard, Allstate=s argument that
any payment of UM coverage to Laci is barred by prior payment of the maximum
amount of liability coverage cannot stand.  The Texas Supreme Court has  made
it clear that policy provisions cannot be used to limit statutory financial
responsibility mandates or to limit the recovery of actual damages.  Therefore,
to the extent the Dellasala policy can be properly construed to provide less
than the statutory minimum amount of coverage or to limit a covered person=s recovery of
actual damages, we find such limiting provisions violate public policy and are
therefore invalid.  We sustain the Jankowiaks= second issue.

The trial court=s judgment is
reversed and remanded.

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

 

Judgment rendered
and Opinion filed August 8, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.

 









[1]  Allstate stipulated that the Jankowiaks claimed
Laci=s injuries exceed the policy coverage, and that Athe nature of the claim to be appealed is as set out
in the Motion for Summary Judgment and the Plaintiffs= Response thereto. . . .@  The plaintiffs= response alleged both drivers were at fault.  In its
Motion for Summary Judgment, Allstate did not mention fault or the extent of
Laci=s injuries.  Allstate relied in part, however, upon
Plaintiff=s Third Amended Original Petition as summary judgment
evidence.  See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904
S.W.2d 656, 660B61 (Tex. 1995) (stating that pleadings, even if sworn
or verified, are generally not competent summary judgment evidence).  This
petition described Laci=s injuries as significant, including disfigurement and
the possibility of another surgery to remove glass from her eye.  The petition
also alleged Laci=s injuries were proximately caused by both drivers. 
We treat these fact issues as undisputed for purposes of this appeal, as both
parties contest a purely legal issue dependent upon the existence of the facts
presented by the Jankowiaks.





[2]  We take these issues in the order presented by the
Jankowiaks.  See Tex. Farmers Ins. Co. v. Murphy, 996 S.W.2d 873, 878
(Tex. 1999) (A. . . a court should not decide the question of public
policy without first determining the contractual rights of the parties under
the policy.@).





[3]  Richard Geiger, who helped draft the legislation,
testified in favor of Senate Bill 1256 before the Economic Development
Committee and said the bill was intended to make a Adistinction among the four coverages that are
available . . .[and] it was our intention in drafting the bill that [the
consumer] could buy all or any part of the package.@  Insurance Code: Hearings on S.B. 1256 Before the
Senate Comm. On Econ. Dev., 65th Leg., R.S. 2B3 (May 2, 1977) (statement of Richard Geiger representing the Texas
Association of Fire and Casualty Companies) (transcript on file with the
Houston Public Library.)





[4]  The Texas Department of Insurance defines collision
coverage as that which pays for damage to an insured=s car without regard as to who caused the accident. 
The insurer must pay for the repair up to the actual cash value of the vehicle,
less the deductible.  Texas Department of Insurance,
http://tdi.state.tx.us/consumer/glossary.html#U (last visited July 27, 2006). 
Uninsured/underinsured coverage is defined as paying for the insured=s injuries and property damage caused by a hit-and-run
driver or a motorist without liability insurance.  It also pays when medical
and car repair bills are higher than the other driver=s liability coverage.  Id.





[5]  In construing a written contract, the primary
concern is to ascertain the true intentions of the parties as expressed in the
instrument.  Dorsett, 164 S.W.3d  at 662.  Therefore, when construing
the policy=s language, we give effect to all contractual
provisions so that none are rendered meaningless.  Schaefer, 124 S.W.3d
at 157.





[6]  Although we have no way of knowing whether the
insurance policy here was adopted in its entirety from a policy form issued by
the Texas Department of Insurance (TDI), AInsurance
Code article 5.06 mandates that the TDI adopt a policy form and endorsements
for each type of motor vehicle insurance governed by Insurance Code articles
5.01 through 5.12.@  Kidd, 997 S.W.2d at 271.  We note here that
Texas courts Aare bound to interpret the statutes and TDI-approved
policy provisions as written.@  Id.
(citing Kemp v. Fidelity & Cas. Co. of N.Y., 512 S.W.2d 688, 690
(Tex. 1964)).





[7]  Likewise, we note that Allstate does not argue
payment of the maximum PIP coverage would preclude any duty to pay under the
liability or UM coverages of this policy.  See Kidd, 997 S.W.2d at 272
(stating PIP offset against UM benefits simply prevents insured from
aggregating discrete subsections of one policy to recover in excess of actual
damages.)





[8]  We reject the Jankowiaks= argument that the lack of a reciprocal provision
offsetting UM coverage, especially when the offset is not reflected in the
declarations page, creates an ambiguity within the policy.  Such reciprocal
clause could have been drafted into the policy just as easily as the clause
offsetting liability coverage, had the parties intended that result.





[9]  Allstate also cites to Rosales v. State Farm
Mutual Automobile Insurance Company, but we find the analysis in that case
does not apply here.  835 S.W.2d 804 (Tex. App.CAustin 1992, writ denied) (precluding two passengers who received
benefits under the driver=s liability insurance coverage from receiving
underinsured benefits from the same policy when the driver caused the accident
and the policy specified its UM provisions did not include the driver-insured=s vehicle); see also State Farm Mut. Ins. Co. v.
Conn, 842 S.W.2d 350, 350B51 (Tex. App.CTyler 1992, writ denied) (finding definitional
exclusion precluded recovery of UM benefits when driver who caused collision
was not uninsured under the policy).





[10]  Although we abbreviate Uninsured/Underinsured
Motorist Coverage as AUM,@ the Hanson
case involved underinsured coverage and not an uninsured motorist, as in this
case.





[11]  Article 5.06-1, entitled AUninsured or Underinsured Motorist Coverage,@ states: 

. . . a
policy form adopted under Article 5.06 . . . shall include provisions that,
regardless of the number of persons injured, policies or bonds applicable,
vehicles involved, or claims made, the total aggregate limit of liability to
any one person who sustains bodily injury . . . as the result of any one
occurrence shall not exceed the limit of liability for these coverages as
stated in the policy. . . .

Tex. Ins. Code Ann. art. 5.06-1(2)(d) (Vernon Supp. 2005).  This article
refers to the uninsured motorist coverages provided for in that
article.  The Atotal aggregate limit of liability,@ therefore, refers to aggregating benefits under the
policy from more than one injured person, more than one applicable policy or
bond, more than one vehicle involved, or more than one claim made.  To the
extent Hanson can be interpreted to mean article 5.06-1(2)(d) limits an
insured=s maximum amount of recovery under both UM and
liability coverages for bodily injuries sustained in one accident, we
disagree.  The language of article 5.06-1(2)(d) does not refer to reaching
outside UM coverage mandated by that article to affect a policy=s other coverage limits.





[12]  Texas law also requires automobile insurance
policies to contain a minimum of $20,000 in liability coverage that cannot be
waived.  Tex. Transp. Code Ann. '' 601.051, 601.072 (Vernon 1999).  Allstate argues,
without citing to any authority, that it appears the legislature is more
concerned that drivers have liability coverage than it is that they have UM
coverage because liability coverage cannot be waived, while drivers can waive
UM coverage .  Allstate=s argument is unpersuasive at best.  Without
attempting to balance the respective importance of each coverage, we recognize
that the legislature has clearly indicated the importance of both coverages by
mandating minimum amounts for each.  Liability coverage cannot be waived
because the law generally requires drivers to maintain a minimum amount of
insurance in order to operate their vehicles.  Sink, 107 S.W.3d at 553. 
UM coverage, therefore, is a failsafe that drivers must opt out of, not into,
to protect drivers from damages caused by financially irresponsible motorists. 
Kidd, 997 S.W.2d at 272.





[13]  The insurance clause in Kidd provided that:

In order
to avoid insurance benefits payments in excess of actual damages sustained,
subject only to the limits set out in the Declarations . . . we will pay all
covered damages not paid or payable under any . . . Personal Injury Protection
Coverage.

 997 S.W.2d at 267.





[14]  Am. Motorists Ins. Co. v. Briggs, 514 S.W.2d
233 (Tex. 1974); Westchester Fire Ins. Co. v. Tucker, 512 S.W.2d 679
(Tex. 1974); Am. Liberty Ins. Co. v. Ranzau, 481 S.W.2d 793 (Tex. 1972).





[15]  The Dellasala policy language supports this outcome
by limiting UM coverage to the lesser of (1) actual damages not already paid or
payable to the injured by those legally responsible and (2) the Aapplicable limit of liability for this coverage.@  Allstate urges that Kidd does not control
because the interrelationship between PIP benefits and UM benefits is different
than that between UM and liability benefits.  However, here, just as in Kidd,
the insurer seeks to offset its UM liability against amounts already paid for
the same damages.  Kidd=s discussion of
offsets in UM coverage applies to this case.